David Jones, Frances Jones and others *vs.* Henry Jones.

*Presumption as to the Loss or destruction of a Letter—Second-ary Evidence—Admissibility of Evidence of Personal resem-blance in cases of Partûs suppositio—What is required to warrant the Introduction of the Deposition of a Deceased witness—Sufficiency of Evidence to go to the Jury—Proof of the Existence of a Record—Practice—Connection illicit in the Beginning, presumed to continue to be of the Same char-acter—Such presumption not overcome by Evidence of Co-habitation—Presumption of Marriage from Cohabitation and repute—Marriage of Slaves—Act of 1777, ch. 12—Admissibility as Evidence of Entries in a Family Bible.*

Where a person to whom a letter was addressed, has been dead for several years, leaving no personal representative of whom inquiry could be made concerning it, and the letter is not shown to have been of such importance as to require its preservation, it may well be presumed that the letter has been lost or destroyed, and secondary evidence of the address written on it, may be admitted.

In a trial involving the question, whether a particular person was the legiti-mate child of his alleged parents, evidence of his personal resemblance to his alleged father, is inadmissible.

To render admissible the deposition of a deceased witness taken in an equity cause, it is incumbent upon the party offering the deposition, to prove the bill and answer in that cause.

The offer of the deposition should be accompanied with the proffer to show that it was the deposition of a deceased witness taken under oath, in a judicial proceeding, involving substantially the same question or matter in dispute as that on trial; to which the plaintiff and defendant in the suit on trial were parties, and that the party against whom it is sought to be used, had the right and opportunity to cross-examine the witness.

Jones, *et al. vs.* Jones.

It is improper to offer *all* the *original* papers in the former cause without disclosing of what the papers consisted.

It is not all the proceedings in an equity cause that can be offered, in order to let in the deposition of a deceased witness, but only such parts of the proceeding as show the nature of the cause, and the parties to the controversy; and they are not as evidence to the jury, but simply to the Court, to enable it to determine whether the deposition is evidence proper to be allowed to go to the jury.

In order to prove the existence of a record which does not belong to the same Court, the proof must be by transcript under seal, and not by the original papers.

The entire case, or the consideration of any particular question involved in it, should not be taken from the jury upon a prayer, that there is no sufficient evidence to justify the finding for the adverse party, if there be any evidence from which a rational conclusion may be drawn as opposed to the theory of such prayer.

Before such a prayer can be granted, the Court must assume the truth of all the evidence before the jury, tending to sustain the claim or defence, as the case may be, and of all inferences of fact fairly deducible from it, as on demurrer to evidence; and this though such evidence be contradicted in every particular by the opposing evidence in the cause.

But where the evidence is of such light and inconclusive nature, that no rational conclusion can be fairly drawn therefrom in support of the claim or defence, sought to be maintained by it, it becomes the imperative duty of the Court to instruct the jury, that such evidence is not sufficient to be considered by them, and that their finding should be accordingly.

Questions whether verdicts have been rendered against the decided weight of evidence, or in disregard of the rules of evidence, or from passion or prejudice, can only be dealt with by the Court in which the trial takes place, upon motion for new trial.

In a case involving the question of marriage, where there is no impediment to marriage, and the connection between the parties was illicit in its commencement, it will be presumed to continue to be of the same character; and in order to overcome that presumption it will be necessary to adduce other evidence than that of the cohabitation of the parties to establish their marriage.

If after the birth of a person claiming to be the legitimate child of his parents, though born as a bastard, there be cohabitation of his father and mother, the latter assuming the name of the former, and the parties treat each other

as man and wife, and treat the claimant as their child, and they are treated as, and reputed to be man and wife by their friends and acquaintances these are facts proper to be submitted to the jury, from which marriage may be inferred, notwithstanding the original illicit connection between the parties.

The presumption of marriage will not arise from the cohabitation of a man with a woman, if during her life and without any proof of a divorce, he marries another woman.

Under the law of this State the marriage of a slave without the consent of the master was not actually void.

The Act of 1777, ch. 12, prohibited ministers of the gospel from publishing the banns, or celebrating matrimony between servants, or a servant and a free person, under a penalty, without the consent of the master. HELD:

That this Act did not render the prohibited marriage void.

On questions of marriage, births, deaths, &c., entries in a family Bible or testament are admissible, even without proof that they have been made by a relative, provided the book is produced from the proper custody.

Proof of the handwriting or authorship of the entries is not required, when the book is shown to have been the family Bible or testament.

APPEAL from the Superior Court of Baltimore City.

This case arises upon the following issues sent from the Orphans' Court of Baltimore City, to the Superior Court for trial:

*First.*—Is Henry Jones, one of the respondents to the petition in this cause, a lawful child of Andrew D. Jones, the intestate, whose estate is for distribution in the cause?

*Second.*—Did the said intestate leave a widow? If yea, who?

By the order sending these issues for trial, Henry Jones was to be the plaintiff in said trial, and David Jones and others the defendants. All the parties are colored persons. Henry Jones, the plaintiff, claims to be the legitimate child of Andrew D. Jones, deceased, and that his father was married to his mother, Henny Jones, a slave woman, after the year 1819, and offered evidence at the trial tending to prove this fact. The defendants claim, and offer

evidence tending to show, that Andrew D. Jones, at the time of the alleged marriage, was the lawful husband of Anne Jones, who died about the year 1844, after which he married Frances Moore, who now claims to be his widow.

The *First*, *Second*, and *Third* Exceptions are sufficiently stated in the opinion of the Court.

*Fourth Exception.*—The defendants after other evidence produced a paper, purporting to contain the deposition given by one Tabitha Toy, before W. S. Pinkney, a commissioner of the Circuit Court of Baltimore City, in a cause depending in said Court, of *Jones vs. Jones.* And further offered to prove that said paper had been filed among the proceedings in said cause, and that it was now produced from the bundle of original papers in said cause, all of which original papers defendants offered to give in evidence, and offered to prove that they were the original papers, and all of the original papers in said cause, and that said plaintiff was a party to said cause. And also offered to prove by the commissioner who took said deposition, that it was taken before him as commissioner of the Circuit Court of Baltimore City, in said equity case of *Jones vs. Jones*, and returned by him to said Court. And also offered to prove that said Tabitha Toy was now dead. And thereupon offered said paper, purporting to contain the deposition of said Tabitha Toy in evidence, in connection with the offer to prove the facts above stated. The plaintiff objected to the reading of said deposition in evidence under the offer made by the defendants, and the Court (DOBBIN, J.,) sustained the objection. The defendants excepted.

*Fifth Exception.*—After all the evidence was closed the defendants offered the following prayers:

1. If the jury find from the evidence that Henry Atkins, *alias* Jones, was the child of Henrietta Atkins, and that said Henrietta was, at the time of the birth of said Henry, a single woman, and that after the birth of said Henry,

no marriage in fact was had between said Andrew and Henrietta, then the verdict on the first issue should be for the defendants, and that there is no evidence of any such subsequent marriage.

2. If the jury find that Andrew D. Jones married Anne Smith in February, 1819, and thereafter lived and cohabited with her as his wife until the death of said Anne, if they shall find such death, and that after the death of said Anne, the said Andrew married the said Frances, and lived and cohabited with her as his wife until his death; then the marriage of said Andrew and Henrietta, as alleged, cannot after the marriage of said Andrew and Anne, be established by cohabitation between said Andrew and Henrietta, or by repute that they were married, unless the jury find such cohabitation or repute between the death of said Anne and the marriage of said Andrew and said Frances; and if the jury do not find such cohabitation and repute of said Andrew and Henrietta in the said interval, then the plaintiff ought to prove an actual marriage between said Andrew and Henrietta before the marriage of said Andrew and Anne, if the jury find the latter marriage.

3. That the burden of proof is upon the plaintiff, Henry Jones, to establish his legitimacy by showing a valid marriage between Andrew D. Jones and Henrietta Atkins, either by a marriage actually celebrated, or in the absence of proof of such a marriage, by the cohabitation of said Andrew and Henrietta as man and wife, or by repute that they were married, and that there is no evidence in this cause of any such marriage actually celebrated, nor of the cohabitation of said Andrew and Henrietta as man and wife, nor of any repute that they were married, or were husband and wife.

4. That if the jury shall find any intercourse whatever between the said Andrew and said Henny Atkins, and that the same was illicit in its commencement, then the pre-

sumption of law is, that it so continued, and the burden of proof is upon the plaintiff to establish some subsequent valid marriage, of which there is no evidence.

5. That if the jury find that Andrew D. Jones married Anne Smith on the 14th February, 1819, and that they thereafter lived together as man and wife, until the death of said Anne, if they shall find such death, and that thereafter the said Andrew married Frances Jones, and lived with her as his wife until the death of said Andrew, and shall find that the said Henry Jones, the plaintiff, was not born earlier then ·the year 1820, and that the said Henrietta Atkins, his alleged mother, never cohabited with said Andrew, nor bore his name commonly, nor was ·by repute known as the wife of said Andrew, then the plaintiff cannot recover, and the finding of the jury upon the first issue should be for the defendant.

6. That there is evidence in the cause from which the jury may find that Frances Jones was lawfully married to Andrew D. Jones, and that if they so find, their finding on the second issue should be, that Andrew D. Jones did leave a widow, and that that widow is Frances Jones, one of the defendants.

7. That if the jury find that at the time of the alleged marriage between said Andrew and Henrietta, the said Henrietta was a slave, and thereafter continued a slave until the year 1863, or 1864, then the said alleged marriage was not valid, unless the owner of said Henrietta consented thereto ; and if the jury shall find that Capt. Frazier, mentioned in the evidence, was during the time aforesaid, the owner of said Henrietta, and never consented to the said marriage, then the jury should find that no valid marriage took place between said Henrietta and Andrew as alleged on the part of the plaintiff, and that there is no evidence in the cause from which the jury can find or presume that said Capt. Frazier, in his life-time, or during the time aforesaid, consented to said alleged

marriage, or treated said Henrietta as having been married, and that there is no evidence of any marriage between said Andrew and said Henrietta after the latter became a free woman.

8. That if the jury believe that the slip cut and produced in evidence was taken from a Bible, a part of a Bible found in the intestate's house and in the custody of his administratrix, then the same is evidence of itself without the necessity of proof of hand-writing.

The plaintiff's counsel agreed in open Court that the Court should instruct the jury as prayed in the defendants' fifth prayer, and the Court accordingly granted the same, and also granted the defendants' sixth prayer, but rejected their first, second, third, fourth, seventh and eighth prayers. The defendants excepted.

The jury found by their verdict "that Henry Jones, the plaintiff, is a lawful child of the said Andrew D. Jones, the intestate; and that Frances Jones, formerly Frances Moore, is the surviving widow of the late Andrew D. Jones." The defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and ALVEY, J.

*Julian I. Alexander* and *George H. Williams,* for the appellants.

*H. C. Wysham* and *Bernard Carter,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

The issues for trial in the Court below were, 1st, Is Henry Jones a lawful child of Andrew D. Jones, deceased? and, 2ndly, Did the said Andrew D. Jones leave a widow, and if yea, who? These issues were sent from the Orphans' Court to be tried, and upon trial the jury found that Henry Jones is a lawful child of Andrew D. Jones,

deceased, and that the latter left a widow, Frances Jones, formerly Frances Moore.

In the course of the trial several exceptions were taken by the appellants; four to rulings on questions as to the admissibility of evidence, and the fifth to the refusal of certain prayers offered by the appellants.

The question raised by the first exception is as to the admissibility of secondary evidence of the superscription or direction of a letter written by the appellee, at Liverpool, to his mother, in Baltimore, in or about the year 1850; the question being to whom and how the letter was directed, the letter itself not being produced. The previous evidence had disclosed the condition of the mother, and the fact that she died about the year 1866. Her whole life, with the exception of the last two years of it, had been spent as a slave, and she died at the house of her former master. The letter is not shown to have been of any such importance as to require its preservation; and as the party to whom it was written has been dead several years, and there being no personal representative of whom inquiry could be made, it may well be presumed that the letter has been lost or destroyed; and therefore the evidence offered of the address written on the letter was properly received. 1 *Taylor Ev.*, sec. 399.

By the second and third exceptions, the question was presented as to the admissibility, as evidence to the jury, of the personal resemblance of the appellee to his alleged father, Andrew D. Jones, deceased; and the Court below allowed the evidence to be given.

In the argument here no authorities on this question were cited by counsel for either party; but upon examination we find that such evidence has been admitted in the trial of questions of *partûs suppositio*, but in those cases only.

In the celebrated Douglas cause, decided by the House of Lords in 1769, Lord MANSFIELD said that he had always

considered likeness, as an argument of a child's being the son of a parent. In other cases, if there should be a likeness of features, there might be a discriminancy of voice, a difference in the gesture, the smile, and various other things ; whereas, a family likeness ran generally through all these ; for in every thing there was a resemblance, as in features, size, attitude and action. He accordingly allowed weight to the proved resemblance of the appellant in that case and his brother to Sir John Stewart and Lady Jane Douglas, and to their dissimilitude to the other persons whose children they were alleged to be. And the same sort of evidence was admitted by Mr. Justice HEATH, in the case of *Day vs. Day*, at the Huntingdon ass., in 1797, upon the trial of an ejectment, where the question was one of *partûs suppositio*. These cases are stated by Hubback, in his work on the evidence of succession, page 384 ; but the author states them with strict limitation, and with apparent doubt whether such evidence be safe and reliable. And as we do not find the principle of these cases stated in other works on the law of evidence of approved authority, we think it fair to conclude that the cases mentioned have not been regarded as establishing a rule upon the subject. Indeed, Mr. Justice HEATH, in the case of *Day vs. Day*, just referred to, admitted that resemblance is frequently exceedingly fanciful, and he therefore cautioned the jury as to the manner of considering such evidence ; and we all know that nothing is more notional in the great majority of cases. What is taken as a resemblance by one is not perceived by another, with equal knowledge of the parties between whom the resemblance is supposed to exist. Where the parties are before the jury, and the latter can make the comparison for themselves, whatever resemblance is discovered may be a circumstance, in connection with others, to be considered. But to allow third persons to testify as to their notions of the resemblance supposed to exist between parties, would be allowing that to be given as

evidence upon which no rational conclusion could be based, but which might readily serve to mislead the jury. We think, therefore, the evidence should have been excluded, and that the second and third exceptions were well taken.

As to the ruling of the Court below, as stated in the fourth bill of exception, we find no error. It was incumbent upon the parties offering the deposition to prove the bill and answer in the equity cause in which the deposition was taken, in order to show that a cause was depending, as well as to show who were the parties, and what was the subject-matter in issue. Proof of bill and answer is not necessary where the deposition is used against the deponent as his own admission, or for the purpose of contradicting him as a witness; but the deposition was offered for no such purpose in this case. The offer of the deposition should have been accompanied with the proffer to show that it was the deposition of a deceased witness, taken under oath, in a judicial proceeding, involving substantially the same question or matter in dispute as that on trial, to which the plaintiff and defendants were parties, and that the former had the right and opportunity to cross-examine the witness. 1 *Taylor Ev., secs.* 434 *to* 438. These requisites were not all complied with in the offer made by the defendants. Though all the original papers were offered, *non constat* that they would have shown what was necessary to let in the deposition. Besides, it was improper to offer *all* the *original* papers belonging to the equity cause, without disclosing of what the papers consisted. It is not all the proceedings in an equity cause that can be offered, in order to let in the deposition of a deceased witness. It is only such parts of the proceedings as show the nature of the cause and the parties to the controversy, that are admitted, and they, not as evidence to the jury, but simply to the Court, to enable it to determine whether the deposition is evidence proper to be allowed to go to the jury. 2 *Taylor Ev., sec.* 1413.

Moreover, the original papers should not have been taken from the files of another Court and produced, instead of copies or exemplifications as provided for by the Code, Art. 37, secs. 58 and 59. The principle has been long and well established, that, in order to prove the existence of a record which does not belong to the same Court, the proof must be by transcript under seal, and not by the original papers; these can only be used in the Court to which they belong. 2 *Taylor Ev., sec.* 1380. This principle is fully recognized by this Court in *Boteler & Belt vs. State, use of Chew,* 8 *Gill & John.,* 359.

We come now to the consideration of the prayers offered by the appellants, and which were refused by the Court below.

The proposition involved in the first prayer is too clear for question, except the assertion which it contains that there is no evidence of the occurrence of any marriage between the parties named, subsequent to the birth of the appellee.

Whatever we may think of the verdict as the result of the whole evidence in the cause, this Court will not say that the entire case, or the consideration of any particular question involved in it, should be taken from the jury, upon a prayer that there is no sufficient evidence to justify the finding for the adverse party, if there be any evidence from which a rational conclusion may be drawn as opposed to the theory of such prayer. Before such a prayer can be granted, the Court must assume the truth of all the evidence before the jury, tending to sustain the claim or defence, as the case may be, and of all inferences of fact fairly deducible from it, as on demurrer to evidence; and this though such evidence be contradicted in every particular by the opposing evidence in the cause. Upon no other principle can the case be withdrawn from the consideration of the jury, who alone are competent to decide on facts of which contradictory evidence has been given.

*McElderry vs. Flannagan,* 1 *H. & G.,* 308; *Leopard vs. Ches. & Ohio Canal Co.,* 1 *Gill,* 222. But, on the other hand, where the evidence is of such light and inconclusive nature that no rational conclusion can be fairly drawn therefrom in support of the claim or defence sought to be maintained by it, it becomes the imperative duty of the Court to instruct the jury that such evidence is not sufficient to be considered by them, and that their finding should be accordingly. Questions whether verdicts have been rendered against the decided weight of evidence, or in disregard of the rules of evidence, or from passion or prejudice, can only be dealt with by the Court in which the trial takes place, upon motion for new trial. This Court has no power to go into a critical analysis of the evidence to determine the comparative weight of that offered by the one side or the other; all that it can properly do, in regard to such question, is to determine whether there was any evidence *legally* sufficient to be submitted to the jury, and that determination is arrived at without at all considering the question as to the preponderance of the opposing evidence.

Now, in this case, the appellee fixes the time of his birth to be about the year 1820; and the most material part of the evidence offered by him, coming principally from himself as a witness, refers to a time subsequent to 1820. If therefore, this evidence was legally sufficient to be submitted to the jury from which they might infer the fact of marriage of the appellee's mother with Andrew D. Jones, the Court below was right in refusing the prayer. And, on careful consideration of the evidence, we think it was properly submitted to the jury. It is true, where there is no impediment to marriage, and the connexion between the parties was illicit in its commencement, as it must have been in this case, according to the hypothesis of the prayer, it will be presumed to continue to be of the same character; and, in order to overcome that presumption, it

will be necessary to adduce other evidence than that of the cohabitation of the parties to establish their marriage. *Barnum vs. Barnum*, 42 *Md.*, 251; *Hubback Ev. Suc.*, 360; 1 *Bishop Mar. & Div.*, sec. 506.   But if evidence be adduced, such as show a change in the conduct of the parties, or a change in the manner of treatment by their relations and friends, or other facts which indicate that they had changed their status before the world, and intended to make that relation lawful which was before unlawful, though such proof may not go to the direct proof of marriage, yet it may be sufficient upon which to found the presumption of marriage.   And in this case, if, after the birth of the appellee, though born as a bastard, there was cohabitation of his father and mother, the latter assuming the name of the former, and the parties treated each other as man and wife, and treated the appellee as their child, and they were treated as and reputed to be man and wife by their friends and acquaintances, these are facts proper to be submitted to the jury, from which marriage may be inferred, notwithstanding the original illicit connexion between the parties.

But while we think the first prayer was properly refused, we are of opinion that the second ought to have been granted.

.As already mentioned, the jury have found that Andrew D. Jones left a widow surviving him, named Frances, formerly Frances Moore.   The appellee's mother died, according to his own showing, in 1866, and there is not the slightest evidence to show, nor is it pretended, that the marriage of Andrew D. Jones to Frances Moore occurred after the death of Henny, the mother of the appellee.

How, or upon what theory, such a verdict was arrived at it is a little difficult to imagine.   There was need of an explicit instruction from the Court on this point of the case.

By the second prayer, the Court was asked to instruct the jury, that if it was found that Andrew D. Jones, married Anne Smith in 1819, and thereafter lived and cohabited with her as his wife until her death, and that after her death said Andrew married Frances, and lived and cohabited with her as his wife until his death ; then the alleged marriage of Andrew and Henny, the mother of the appellee, could not, after such marriage with Anne Smith, be established by *cohabitation* between Andrew and Henny, or by *repute* that they were married, unless such cohabitation or repute be found between the death of Anne and the marriage of Andrew and Frances; and if such cohabitation and repute be not found in such interval, then the appellee ought to prove an actual marriage between Andrew and Henny before the marriage of Andrew and Anne.

There is nothing in this prayer to which the appellee could rightfully object. It is, of course, very clear that Andrew D. Jones could not have been the lawful husband of two wives living at the same time. If, as a fact, it be found that he married Anne Smith in 1819, and lived and cohabited with her, then, in the absence of direct proof of previous marriage, the presumption is that he was a single man when he married her, and during his marriage with her, of course, he could contract no valid marriage with another woman. The reason for such presumption is very clearly stated in the case of *Breakey vs. Breakey*, 2 *N. C.*, *Q. B.*, 349, 358, where the Chief Justice of that Court, in delivering his opinion, said: "If Andrew Breakey, after cohabiting many years with this defendant, had, during her life-time, married another woman in this country, he would, by that act, have destroyed the presumption of his marriage with the defendant, which would otherwise have arisen from the fact of cohabitation. He would have shewn by it, what the law could not have presumed, that he was willing to incur the moral guilt of living with

a woman as her husband, when he was not her husband, for inevitably, this must have been the case in regard to one or the other of the women, when both were, to his knowledge, living at the same time. The consequence then would have been, that, if charged with bigamy in contracting the second marriage, the presumption would rather have been against the fact of the first marriage, for cohabitation would in such case, have supplied none in its favor; and the inference would rather be, that he must have been aware there was no sufficient ground for the reputation of the first marriage, or he would not have incurred the guilt of felony, and the danger which attends it, by marrying again.'' The principle thus stated appears to have been followed in subsequent cases in the same Court. 1 *Bishop on Mar. & Div.*, sec. 444. Here, there is no pretence that there is any direct proof of marriage between Andrew D. Jones and Henny, the mother of the appellee; the only evidence relied on being that of habit and repute. The presumption of marriage from cohabitation may be rebutted by evidence of separation, without apparent rupture or sufficient cause; (*Jackson vs. Claw*, 18 *John.*, 346; *Senser vs. Bower*, 1 *Penn.*, 450;) and in case of conflicting presumptions, the one in favor of innocence shall prevail. 1 *Penn.*, 452. This is fully exemplified by several cases stated by Bishop, in his work on *Marriage and Divorce*, 1 *vol.*, sec. 446. As, for instance, where in a legitimacy case, an actual marriage between the parents was proved, it was held, that this fact of marriage could not be overthrown by showing, simply on the strength of cohabitation and reputation, a pre-existing marriage of one of the parties. And so, in a case occurring in the Ecclesiastical Court in England, where two women severally claimed administration of the effects of the deceased as being his widow, and the one who was last married to him offered to show, that his marriage to the other woman was void by reason of his

then having alive a former wife, who afterward, and before the last marriage, died ; it was held, that evidence of cohabitation and repute was insufficient to establish the *first* marriage, notwithstanding both parties to it were dead, but such marriage should, *as an actual fact,* be proved. *Taylor vs. Taylor,* 1 *Lee,* 571, 5 *Eng. Ecc. Rep.,* 454.

If, then, it be found as a fact, according to the requirement of the appellants' second prayer, that Andrew D. Jones was married either to Anne Smith or Frances Moore during the life of Henny, the mother of the appellee, (there being no evidence of any divorce,) all mere presumption of previous marriage with the latter, founded simply upon habit and repute, is at once overthrown, and it then becomes incumbent upon the appellee to establish the alleged marriage of his mother to Andrew D. Jones as an actual fact, by more direct proof.

The appellants' third prayer, we think, was properly refused, for reasons stated in considering the first prayer. There was some evidence legally sufficient to be submitted to the jury. And we think the fourth prayer was also properly refused. The form and terms of this latter prayer were calculated to mislead the jury ; and besides, it asserted that there was no evidence of marriage.

The seventh prayer was also properly refused. It embodies the proposition that without the consent of the master the marriage of the slave was actually void. There is no warrant for this in the law of this State. The statute, Act of 1777, ch. 12, prohibited ministers of the gospel from publishing the banns, or celebrating matrimony between servants or a servant and a free person, under penalty, without the consent of the master. But the statute did not declare the marriage void, nor was that the operation of it. The minister subjected himself to a fine, but the marriage was valid.

The eighth prayer of the appellants was rightly rejected. It did not require the jury to find what was essential to be

found, namely, that the Bible from which the entries were taken was the family Bible of Andrew D. Jones, and had been in his possession as such. That the book was found in the intestate's house, after his death, in the possession of his administratrix, is no evidence that the deceased ever saw it. On questions of marriage, births, deaths, &c., entries in a family Bible or testament are admissible, even without proof that they have been made by a relative, provided the book is produced from the proper custody. Proof of the hand-writing or authorship of the entries is not required, when the book is shewn to have been the family Bible or testament, for then the entries, as evidence, derive their weight, not more from the fact that they were made by any particular person, than that, being in that place as a family registry, they are to be taken as assented to by those in whose custody the book has been kept. 1 *Taylor Ev.*, sec. 585; *Hubbard vs. Lees, L. R.*, 1 *Ex.*, 255.

·For the reasons stated, we reverse the rulings of the Court below in the second and third exceptions, and in refusing to grant the second prayer of the appellants, but affirm its rulings in all other respects; and remand the cause for a new trial.

*Rulings reversed, and*
*cause remanded.*

(Decided 21st June, 1876.)