HANAWALT, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 8 — September 22, 1885.*

*Bastardy: Likeness of child to defendant: Improper comments by counsel.*

1. In bastardy proceedings the bastard child may not be exhibited to the jury for the purpose of showing by its likeness to the defendant that it is his child.

2. The trial court allowed the bastard child to be exhibited in evidence, but ruled that no comments should be made. Upon the argument counsel for the state commented upon certain resemblances between the child and the defendant to which attention had not been called when the child was present. *Held,* that such comments were improper, and, in the absence of any direction to the jury to disregard them, might be ground for the reversal of a judgment against the defendant.

ERROR to the Circuit Court for *Waupaca* County.

The facts sufficiently appear from the opinion.

*G. W. Cate,* for the plaintiff in error.

For the defendant in error the cause was submitted on the brief of the *Attorney General.*

TAYLOR, J.   This was an action to charge the plaintiff in error with the support and maintenance of a bastard child. On the trial in the circuit court the state was permitted, against the objection of the plaintiff in error, to bring into court, and exhibit to the jurors for their inspection, as evidence in the case, the child of which he was charged with being the father; such child then being less than one year old.   This is assigned as error in this court.   The plaintiff also assigns as error that the counsel for the state was permitted to comment to the jury and draw their attention to the alleged similarity of the ears of the child to the ears of the plaintiff in error, as well as to the ears of the plaintiff's

father, who was also in court and in the presence of the jury, the child, at the time, being absent.

Upon the question of the propriety of exhibiting the child to the jury as evidence in cases involving its paternity, the decisions of the courts are not in harmony. In North Carolina the supreme court of that state hold that such exhibitions may properly be made. See *State v. Woodruff*, 67 N. C. 89; *State v. Britt*, 78 N. C. 439; *Warlick v. White*, 76 N. C. 175; and *State v. Bowles*, 7 Jones, Law (N. C.), 579. The same was held by the supreme court of Iowa in *State v. Smith*, 54 Iowa, 104. In this last case the child was over two years old; but, in the case of *State v. Danforth*, 48 Iowa, 43, the same court held it was improper to exhibit to the jury a child only three months old. In *Eddy v. Gray*, 4 Allen, 435; *Jones v. Jones*, 45 Md. 144; *Keniston v. Rowe*, 16 Me. 38, the courts hold that testimony of witnesses that the child looks like or resembles in appearance the person charged to be the father is not admissible, and in *Reitz v. State*, 33 Ind. 187, and *Risk v. State*, 19 Ind. 152, it was held error to permit the prosecution to give the child in evidence, so that the jury might compare it with the defendant who was present in court.

In the *Douglas Case*, Lord MANSFIELD is reported as saying: "I have always considered likeness as an argument of a child's being the son of a parent; and the rather as the distinction between individuals in the human species is more discernible than in other animals. A man may survey ten thousand people before he sees two faces perfectly alike, and in an army of a hundred thousand men every one may be known from another. If there should be a likeness of feature, there may be a discriminancy of voice, a difference in the gestures, the smile, and various other things; whereas a family likeness runs generally through all these, for in everything there is a resemblance; as of features, size, attitude, and action." This language attributed to Lord MANS-

FIELD is taken from Wills on Circumstantial Evidence, *94 (3d ed. 113; 5th Am. ed. 117). This author, on the next page, says that in a Scotch case, when the question was who was the father of a certain woman, an allegation that she had a strong resemblance in the features of the face to one of the tenants of the alleged father was held not to be relevant as being too much a matter of fancy and of opinion to form a material article of evidence. In the case of *Jones v. Jones*, 45 Md. 144, the learned judge who wrote the opinion refers to the language used by Lord MANSFIELD in the *Douglas Case*, and disapproves of it as authority, and thinks it has not been followed as a precedent in the English courts; and he quotes with approval the language of Justice HEATH in the case of *Day v. Day*, decided in 1797, in which the learned judge stated to the jury "that resemblance is frequently exceedingly fanciful, and he therefore cautioned the jury as to the manner of considering such evidence." The learned judge in the case of *Jones v. Jones*, *supra*, in disapproving of the language used by Lord MANSFIELD, says: "We all know that nothing is more notional in the great majority of cases. What is taken as a resemblance by one is not perceived by another with equal knowledge of the parties between whom the resemblance is supposed to exist."

It should be remembered that in the *Douglas Case*, and the Maryland case, the question of parentage was as to a person who was full grown. So that if there is anything certain in family likeness it would be fully developed, and if in any case such claimed likeness could be considered by a jury in determining the question of parentage, it would be in a case of that kind. In the case of *Jones v. Jones*, the court seemed to be of the opinion that, "when the parties are before the jury, and they can make the comparison for themselves, whatever resemblance is discovered may be a circumstance, in connection with others, to be considered."

In any case this kind of evidence is inherently unsatisfactory, as it is a matter of general knowledge that different persons, with equal opportunities of observation, will arrive at different conclusions, even in the case of mature persons, when a family likeness will be fully developed if there be any. And when applied to the immature child its worthlessness as evidence to establish the fact of parentage is greatly enhanced, and is of too vague, uncertain, and fanciful a nature to be submitted to the consideration of a jury.

The learned author of "Beck's Medical Jurisprudence" says: "It has been suggested that the resemblance of a child to the supposed father might aid in deciding doubtful cases. This, however, is a very uncertain source of reliance. We daily observe the most striking differences in physical traits between parent and child, while individuals born in different parts of the globe have been mistaken for each other. And even as to malformations, although some remarkable resemblances in this respect have been noticed between father and child, yet we should act unwisely in relying too much on them. There is, however, a circumstance connected with this which, when present, should certainly defeat the presumption that the husband or paramour is the father of the child, and that is when the appearance of the child evidently proves that its father must have been of a different race from the husband or paramour, as when a mulatto is born of a white woman whose husband is also white, or of a black woman whose husband is a negro." In a case where the question of race is concerned, the child may be exhibited for the purpose of showing that it is or is not of the race of its alleged father. *Warlick v. White*, 76 N. C. 175. In a case like the one at bar, we think no exhibition should be made.

Justice Lyon, in the case of *Washburn v. M. & L. W. R. Co.* 59 Wis. 364, 370, says: "To allow jurors to make up their

verdict on their individual knowledge of disputed facts material to the case, not testified to by them in court, or upon their private opinions, would be most dangerous and unjust. It would deprive the losing party of the right of cross-examination and the benefits of all the tests of credibility which the law affords. Besides, the evidence of such knowledge or the grounds of such opinions cannot be preserved in a bill of exceptions or questioned on appeal. It would make each juror the absolute judge of the accuracy and value of his own knowledge or opinions, and compel the appellate court to affirm judgments on the facts, when all the evidence is before it and there is none whatever to support the judgment." This reasoning clearly shows the impropriety of permitting the jury to base their judgment, in whole or in part, upon their inspection of the child exhibited to them in court. If the child itself, when presented to the jury for inspection, is or may be evidence tending to prove its parentage, then this court upon appeal could not reverse their verdict, although the written bill of exceptions entirely fail to support such verdict, for the reason that this court would not have before it all the evidence in the case upon which the jury acted.

The learned attorney general says the bill of exceptions does not show that the child was exhibited to the jury as evidence in the case. In this he appears to be mistaken, as, in the part of the bill of exceptions which follows the reporter's notes of the evidence, it is clearly stated that "in course of the trial the plaintiff produced in court the child claimed to have been begotten by the defendant, and proposed to exhibit the same to the jury as evidence that it was the defendant's child. The defendant objected, and the court ruled that the child might be exhibited in evidence, but that no comments should be made." This statement, it will be seen, is made a part of the bill of exceptions.

The comments made by the counsel for the state to the

jury in his argument, calling the attention of the jury to a peculiarity of the ears of the defendant and of his father, and his assertion that the child had the same peculiarity as to the ears, in the absence of the child, and without its appearing that the attention of the jury had been before called to such alleged peculiarity of the ears of the child, the defendant, or his father, were highly improper and were likely to prejudice the rights of the defendant. This impropriety on the part of the prosecuting attorney might, in itself, be sufficient ground for a reversal of the judgment, in the absence of any direction on the part of the presiding judge to the jury to disregard entirely the statements so made by the counsel, and a clear statement to the jury by such judge of the impropriety of such comments on the part of the counsel in his argument.

For the errors in permitting the child to be exhibited to the jury as evidence in the case tending to prove its paternity, and on account of the impropriety of the counsel for the prosecution in calling the attention of the jury to the alleged peculiarity of the child's, the defendant's, and his father's ears, as above set forth, the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.