## Commonwealth *v.* Pearl, Appellant.

*Criminal law—Fornication and bastardy—Child.*

In a fornication and bastardy case where a child, an infant sixteen months, is in court, and in the presence of the jury, and the district attorney takes it in his arms and comments on its resemblance to the defendant it is not error for the court to say: "In reference to the exhibition of the child, the court will say that the child is here in the case. The prosecutrix says that the defendant is the father of the child. You have seen the child, and while it was not offered as an exhibit in the case, it is in the case, and if there is any resemblance between the child and the defendant as he sits at the bar, which is apparent to the jury, the jury is at liberty to take that into consideration."

Submitted Oct. 3, 1906.   Appeal, No. 26, Jan. T., 1907, by defendant, from judgment of Q. S. Carbon Co., Oct. T., 1904, No. 33, on verdict of guilty in case of Commonwealth v. Louis Pearl.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Indictment for fornication and bastardy. Before HEYDT, P. J.

After the general charge was concluded counsel for defendant asked the court to charge the jury so far as the remarks of the district attorney were concerned, and as far as taking the baby in his arms and saying it was exhibit " A," and calling out the different features and against the objections of the counsel for the defendant, and asked for a dismissal of the proceedings.

The Court: In reference to that, the court will say that the child is here in the case. Mary Hornyak, the prosecutrix, says that Louis Pearl is the father of the child. You have seen the child, and while it was not offered as an exhibit in the case it is in the case, and if there is any resemblance between this child and this defendant as he sits at the bar which is apparent to the jury, the jury is at liberty to take that into consideration. Exception. [5]

Verdict of guilty, upon which judgment of sentence was passed.

*Error assigned* amongst others was above instruction.

*William G. Thomas* and *Freyman & Nothstein*, for appellant.—The exhibition to the jury on a prosecution for bastardy of an infant child, for the purpose of showing its resemblance to the defendant, is error: Iowa ex rel. Scott v. Harvey, 52 L. R. A. 500 ; Robnett v. People, 16 Ill. App. 299 ; Hanawalt v. State, 64 Wis. 84 (24 N. W. Repr. 489).

It was the duty of the court to supervise the address of the district attorney, and protect the defendant or parties litigant from the injurious remarks and extremely prejudicial action of the district attorney, and direct the jury to disregard the improper remarks: Com. v. Windish, 176 Pa. 167 ; Holden v. Penna. R. R. Co., 169 Pa. 1 ; Sheehan's Est., 139 Pa. 168.

*George E. Gray*, district attorney, and *Frank P. Sharkey*, for appellee.—A conviction of bastardy will not be dismissed because counsel for the people in his argument to the jury called attention to an alleged resemblance between the child and the defendant: People v. Wing, 115 Mich. 698 (74 N. W. Repr.

179); Gilmanton v. Ham, 38 N. H. 108; Gaunt v. State, 52 N. J. L. 178 (19 Atl. Repr. 135); Scott v. Donovan, 153 Mass. 378 (26 N. E. Repr. 871).

OPINION BY ORLADY, J., February 25, 1907:

The defendant was convicted of fornication and bastardy, and though he presents six assignments of error, all but the fifth may well be dismissed as without merit. During his closing address the district attorney took the child of the prosecutrix in his arms and presented it to the jury, referring to it as exhibit " A," and called the attention of the jury to an alleged resemblance to the defendant. The counsel for the defense made a prompt objection, and requested the court to withdraw a juror, which was refused, and the trial judge concluded his charge to the jury by saying : " In reference to the exhibition of the child the court will say that the child is here in the case. Mary Hornyak, the prosecutrix, says that Louis Pearl is the father of the child. You have seen the child, and while it was not offered as an exhibit in the case, it is in the case, and if there is any resemblance between this child and this defendant as he sits at the bar, which is apparent to the jury, the jury is at liberty to take that into consideration."

The exact language used by the district attorney is not brought formally on the record, but the fact that the child was exhibited to the jury, and that an alleged resemblance to the defendant was suggested by that officer in his stating, " if they are not the ears of the defendant, acquit him," is conceded, and was so dealt with by the court below in refusing a new trial. We do not have any direct decision on this subject, and the practice varies in different sections of the state. In some counties such an exhibition and comment has always been permitted, and in others it has been as positively condemned. Nor is the question settled in other states. A large number of cases bearing directly on the subject may be found collated in Wigmore on Evidence, Am. & Eng. Ency. of Law, and other digests, but the arguments adduced and conclusions reached are so conflicting as to leave the question as to which is the better practice uncertain.

While it is conceded that the progeny of persons of a particular race or of distinct types receive from the progenitors

certain corporal characteristics which are radically different from the ones transmitted from other races and types, especially with reference to color, hair, features and complexion, yet the evidential value of such distinguishing traits is materially lessened through the intermixing of races, and while it is true in principle as a law of nature that like begets like, there are so many modifying influences affecting the human race that inherited resemblance is at best largely theoretical. It is equally well known that while a child is but a few weeks or months of age, there is always a peculiar immaturity of features which characterizes it as infantile, and that changes of that condition of uncertain and immature development are always expected; while resemblance to a particular person during that transitory stage may be readily imagined by interested parties, it is but rarely more than an imaginary similarity, so fanciful and visionary as to be of no value as an item of substantive proof.

In the trial of such cases the child is usually in court with the mother, and while not technically offered as an item of evidence, is so distinctly subjected to the view of the jurors that it is necessarily in the case, and such a presence cannot be ignored. For this reason it is held by all the English courts, and by a large number in our country, to be a sound rule to admit the inspection of the child by the jury to ascertain whether or not there is any similarity of distinctive and specific trait, provided that the child is, in the opinion of the trial court, old enough to possess settled features or other corporal indications: Wigmore on Evidence, 166. As stated in Sheehan's Estate, 139 Pa. 168: " The alleged resemblance is a circumstance, but a very weak one. But, granting the likeness, it may be the result of the merest chance. We all know that striking likenesses often occur between persons who are not of the same blood, so strong that in many instances that one is taken for another." This was said in a case dealing with a resemblance in the adult life of a person, and the weight to be given such alleged resemblance is made the more indefinite in this case by the immaturity of the child.

The trial judge recognized the unsatisfactory character of such proof, and also that the child, then sixteen months old, was in the court and before the jury. He fairly submitted the

question of alleged similarity to the jury by saying, " if there is any resemblance between the child and this defendant, which is apparent to the jury, the jury is at liberty to take that fact into consideration." The effect to be given to it, meager and uncertain as it was, like the credibility of witnesses, was for the jury. Special instructions on this matter were not requested, the defendant relying on the proposition that such an exhibition was of itself a fatal error. To this proposition we cannot agree. The case has been tried twice, and the contention of the defendant is answered by many decisions of courts of high character. Under our practice the disposition of the question is one largely within the discretion of the trial judge, and in this instance there is not sufficient on the record to warrant a reversal of the judgment on account of an abuse of such discretion.

The judgment is affirmed.

Morrison, J., dissenting:

I cannot consent to the affirmance of this judgment. A careful examination of the evidence convinces me that the defendant made a very strong defense in the court below and that he did not have a fair and impartial trial, and the question here is whether his conviction ought to be sustained. This is the second time this case has been before us. After his conviction on the first trial, the defendant appealed to this court, and we were compelled to reverse the judgment because the learned court below refused to allow the defendant to prove that he was sick and delirious during the latter part of November and first part of December, 1903, the time when the prosecutrix testified that the illicit intercourse took place with her in the cellar of the house in which she lived: Commonwealth v. Pearl, 29 Pa. Superior Ct. 307.

The prosecutrix testified clearly and pointedly that the illicit connection between her and the defendant took place in the latter part of November and the first part of December, 1903, in the cellar of the house in which she was employed. The date of the birth of the child corresponds with the theory that it was begotten at about the time she states. The defendant proved at the trial by Dr. Laciar, James Pearl, Daniel Searfoss, Mrs. James Pearl and S. Miller that from about the middle of

November to the middle of December he was seriously ill with pleuro-pneumonia, and that he was delirious and in a dangerous condition during most of this time. This evidence tended strongly to show that he could not have been in the cellar having illicit intercourse with the prosecutrix at the dates or times fixed by her.

The defendant positively denied that he had illicit intercourse with the prosecutrix as she stated, and she did not pretend that he ever had intercourse with her at any time or place, except in the cellar in the latter part of November and the first part of December, 1903. In addition to this, three witnesses positively testified that the prosecutrix told them, in substance, that the defendant was not the father of her child, but that it was Andrew Unger's child, and that she wanted to get enough money, or $40.00, from Pearl and go to New York and marry Unger. The prosecutrix was not corroborated in her story that Pearl was the father of her child.

I do not find any merit in the first and second assignments of error. I would sustain the third assignment: The learned court said to the jury: "If you believe from all the testimony in the case that Louis Pearl was sick during that time from November 18 to December 20, 1903, and that he could not have had connection, and did not have connection with the prosecutrix during that time, and also that he did not have connection with her prior to that time or subsequent to that time, then your verdict will be not guilty and you will acquit the defendant." In my opinion, there is manifest error in this portion of the charge. I have already said that the prosecutrix specifically fixed the illicit intercourse with the defendant during the latter part of November and the fore part of December, and she did not pretend that she ever had illicit connection with him at any other time or place, except in the cellar and at the time stated. Therefore, the learned court erred in plainly telling the jury, in effect, that they might find that the defendant had connection with her prior to or subsequent to the times fixed by herself. As the case was presented by the prosecutrix's own testimony, the jury should have been instructed plainly to find whether or not defendant had illicit connection with her in the cellar during the latter part of November or fore part of December.

The fourth and fifth assignments should be considered together. The fourth: "It was error for the district attorney to take the child in his arms and point out the different features of the child to the jury, and draw attention to it and comment on its resemblance to the defendant, when there was evidence of the child's features in evidence." The fifth: "The court erred in the charge to the jury in reference to the remarks of the district attorney (p. 12). The court said: In reference to that the court will say, that the child was in the case. Mary Hornyak, the prosecutrix, says that Louis Pearl is the father of the child. You have seen the child and while it was not offered as an exhibit in the case, it is in the case, and if there is any resemblance between the child and this defendant as he sits at the bar, which is apparent to the jury, the jury is at liberty to take that into consideration."

The record shows that before the jury retired, counsel for the defendant excepted to the charge of the court and the rulings on the offers of evidence and the remarks of the district attorney excepted to, and asked that the charge of the court and the testimony and the remarks excepted to, be transcribed and filed, which request was granted by the court.

In considering the fourth and fifth assignments it must be borne in mind that the child was not offered in evidence, nor does it appear that any notice whatever was given during the trial that the district attorney would attempt to argue to the jury that there was a physical resemblance between the child and its putative father, the defendant. A somewhat extended examination of the authorities, by text-writers and the courts of many states, demonstrates that there is a wide divergence of opinion as to whether a young child in a fornication and bastardy case can be exhibited to the jury at all; many of the courts holding that the features and appearance of a young child are too indistinct and uncertain to warrant the exhibit of such a child to the jury to corroborate the testimony of the prosecutrix in an action against its putative father.

In State of Iowa ex rel. Scott v. Harvey, 52 L. R. A. 500, the supreme court of Iowa held: "The exhibiting to the jury in a prosecution for bastardy of a child nine months old, for the purpose of showing its resemblance to the defendant, is error." In that case the author appends a large number of

cases selected from the higher courts of many states and these cases are in marked conflict. I will not here quote them as they may be readily referred to in the authority cited, but one of the cases is so strikingly like the case under consideration that I will refer to it: "But it is error for the counsel for the state in bastardy proceedings to comment to the jury and draw their attention to an alleged similarity of the child's ears to the ears of the defendant and his father who is in court also, and in the presence of the jury, in the absence of the child, and without its appearing that the attention of the jury had been before called to such peculiarity : " Hanawalt v. State, 64 Wis. 84; 54 Am. Rep. 588 (24 N. W. Repr. 489).

In the case under consideration it does not appear that the child was offered in evidence or the jury's attention called to it until the zealous district attorney, during his argument, took it in his arms and exhibited its ears to the jury, and contended that they closely resembled the defendant's ears. Even if we take the view that the child was in the case and that the jury was entitled to look at it and determine whether or not it resembled the defendant, I would hold that the conduct of the district attorney was unfair and improper. If he intended to argue that the child resembled the defendant, he should have offered as a part of his case, to exhibit it to the jury, stating his purpose, and thus giving the defendant an opportunity to reply, if he could, to this branch of the case, and giving his counsel an opportunity to make such argument thereon as he saw fit before he closed his case to the jury.

My conclusion, from an examination of Wigmore on Evidence and many other authorities, is that the child, in a prosecution for fornication and bastardy, may be exhibited to the jury, as a part of the commonwealth's case, in an orderly and proper manner. So also the defendant might exhibit the child to the jury as a part of his defense, and argue that it did not resemble him. See 2 Wigmore on Evidence, sec. 1168, p. 1369; also 1 Wigmore on Evidence, sec. 222, p. 275; see also Flower v. Ry. Co., 132 Pa. 524.

But, in my opinion, the supposed resemblance between the child and the putative father is not sufficient, standing alone, to support a conviction. The weight of authority seems to be in favor of permitting the exhibit of the child to the jury, in

corroboration of other competent evidence, and the clear weight of authority is that such supposed resemblance is uncertain evidence and should be carefully explained and controlled by the court.

In Sheehan's Est., 139 Pa. 168, I find that our Supreme Court considered the question of family resemblance (p. 182). It is there said: "The alleged resemblance of the appellant to Sheehan is a circumstance, but a very weak one. The evidence is conflicting upon this point. But, granting the likeness, it may be the result of the merest chance. We all know that striking likenesses often occur between persons who are not of the same blood; so strong that in many instances the one is mistaken for the other." See also 3 Am. & Eng. Ency. of Law (2d ed.), p. 885, and also footnotes on same page.

It was clearly the duty of the court to supervise the address of the district attorney and protect the defendant from injurious remarks, and prejudicial action of that official, and direct the jury to disregard the improper remarks: Commonwealth v. Windish, 176 Pa. 167.

I cannot approve the conduct of the district attorney in exhibiting the child to the jury and commenting upon its resemblance to the defendant, in the manner complained of by the assignments and exception; nor can I agree that the charge of the learned court properly dealt with this branch of the case. In view of the fact that the child had not previously been exhibited to the jury, and that the district attorney used it in his closing argument, the learned court ought to have instructed the jury that the appearance of the child was not properly before them, and to disregard its appearance and that portion of the argument, and to determine the case upon the competent evidence.

I would reverse with a new venire.