JAMES H. CROMWELL

*vs.*

CHANCE MARINE CONSTRUCTION COMPANY.

*Assumpsit*: *money had and received; scope of action.   Sales:
breach of contract; suit for return of money.
Prayers*: *taking case from jury.*

An action of assumpsit will lie to recover money in the pos-
session of the defendant which, in justice and good conscience,
belongs to the plaintiff; and the defendant, under the general
issue plea, may rely upon any just ground of defense that shows
he was not bound to pay it.                              p. 110

If there is any evidence competent or of sufficient probative
force to sustain the proposition sought to be maintained, or to
support the plaintiff's case, its weight and value should be left
to the consideration of the jury.                       p. 109

Where the defendant had paid the plaintiff for a motor boat,
into which he was to install a certain make of engine, but de-
livered instead the boat with a different and inferior engine,
the plaintiff, on returning the boat, may maintain an action in
assumpsit for the purchase price.                pp. 106, 110

*Decided June 27th, 1917.*

Appeal from the Circuit Court for Anne Arundel County.
(BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Constable, JJ.

*Eugene P. Childs,* for the appellant.

*Robert Moss,* for the appellee.

Briscoe, J., delivered the opinion of the Court.

The controversy, in this case, is over the sale of a motor-boat.

The declaration is in assumpsit, upon the usual common counts. The defendant pleaded the general issue pleas, and the trial in the Court below resulting in a judgment for the defendant, the plaintiff brings this appeal.

At the trial a single exception was taken and that was, to the ruling of the Court, at the close of the plaintiff's testimony, in granting the defendant's prayer, withdrawing the case from the consideration of the jury, and directing a verdict for the defendant.

The sole question presented, on the appeal, is whether the Court below committed an error in granting the defendant's prayer, and this requires a review of the evidence, disclosed by the Record.

The Record is a short one, and there were only two witnesses examined in the case. The testimony is somewhat brief and the plaintiff's testimony is the only material evidence in the case.

It appears, that the plaintiff who resides upon the Severn River, in Anne Arundel County, sometime in the year 1916, purchased of the defendant, a motor-boat, for the sum of $375. Prior to the contract of sale, it was agreed that a small engine which was then in the boat, should be removed and what was called a Hubbard engine was to be installed in its place.

It further appears, that on the 25th of February, 1916, the plaintiff paid the sum of $210.00, on account of the boat and engine, but with the understanding that if a Hubbard engine was not put in it, he did not want it. The following letter, introduced as evidence in the case shows the contract and understanding between the parties.

"The Chance Marine Construction Company,
Designers and Builders of Boats,
Office and Shipyard, Severn Avenue,
Eastport, Md.
Annapolis, Md., Feb. 23, 1916.

Mr. J. H. Cromwell,
Forrest and Front Sts.,
Balto., Md.

Dear Herbert:

Confirming telephone conversation with you regarding the Caughy boat, will say that we will let you have the boat at $375.00 as per your request. As you understand, the hull does not belong to us, we will ask you for your check for $210; we will then take the engine out and put in the 12 H. P. Victor motor in its place. The balance payable when the boat is delivered. You will understand that we could not make any change in the boat until it is paid for, as the money has to be turned into the estate of the owner.

Yours very truly,
Caryl H. Bryan."

On the 25th of February, 1916, the plaintiff replied to the foregoing letter, as follows:

"Homestead Park Product Company,
Forrest and Front Streets,
Baltimore, Feb. 25, 1916.

The Chance Marine Construction Co.,
Annapolis, Md.

Gentlemen:

I am enclosing herewith my check for $210.00 to apply on account of the Seabury boat and engine.

Your attention is called to the fact that before I agreed to purchase this outfit or even before I made an offer for same in your office last week, your Captain Baker represented this engine to be one manufactured by the Hubbard Motor Company, and it was on the strength of this representation that I made the above offer and finally agreed to purchase.

In the meantime I have been familiarizing myself with the different parts of the Hubbard Motor, and after talking with your Mr. Bryan this afternoon I ran across some information that led me to believe that it was possible that your motor was not a Hubbard machine, but one manufactured for the Fairbanks Company by another concern and with which they have experienced a large amount of trouble. I have just finished talking with your Captain Baker on the phone and he assured me that the motor is a Hubbard, and if such is the case all is well and good, and I want you to go ahead with the work as promptly as you can, but on the other hand I want you to be sure of this fact before you do go to work on it, because if it is not a Hubbard engine I don't want it, as I do not care to experiment with any engine that you or I don't know anything about.

Yours very respectfully,

C. K.                                    J. H. Cromwell."

The plaintiff also testified that he got the boat on Thursday and returned it on Saturday of the same week, that when he went after the boat there were two or three hours' work on the engine before it was ready to be taken away, that the boat leaked, that it broke down on its way home before they got to the railroad bridge, "we had to anchor and spend an hour and then came back with one cylinder and they repaired it and we started out again."

He further testified that the defendant stated that it was a Hubbard engine which had been put in and installed in the boat, when it was turned over to him. Upon re-direct

examination he was asked the following question: "Then you did not find out it was not a Hubbard motor until after you took the boat back? Answer: "Yes, sir." That he told the defendant, when he carried the boat back, that if he could prove to him, that a Hubbard engine had been installed in the boat he would take it, but this was not done. That he made demand for the return of the $210 before bringing the suit, but the defendant refused to answer any correspondence, or to return the money, even upon a personal appeal.

From this outline and statement of the testimony, and it embraces all of the material and substantial facts disclosed by the Record, it will be seen, that the question here presented is a narrow one, and that is, whether the Court below committed an error, in withdrawing the case from the jury, by the instruction granted.

We think, the testimony as disclosed by the Record, was legally sufficient to take the case to the jury and the Court committed an error in granting the defendant's prayer.

It is well settled by a long line of decisions of this Court, that the Court has no power or authority to decide upon the comparative weight of evidence, but that is exclusively for the jury.

If there is any evidence competent or of a sufficient probative force to sustain the proposition sought to be maintained or to support the plaintiff's case, the weight and value of this evidence should be left for the consideration of the jury. *Baltimore Elevator Co.* v. *Neal,* 65 Md. 438; *Jones* v. *Jones,* 45 Md. 154; *Burke* v. *M. & C. of Balto.,* 127 Md. 560.

The theory of the plaintiff's case, is, that he purchased from the defendant a motor-boat, in which there should have been installed a Hubbard engine, of the kind agreed upon between the parties and that he paid the sum of $210 on account of the purchase price, and that through the fraud of the defendant, he did not get what he bargained for, but on the contrary the defendant delivered to him a boat and engine of no use and value, and that upon this discovery.

he returned it to the defendant and demanded the money which he had paid, but the defendant refused to return or to pay it back.

The law is well established that in an action of assumpsit for money had and received the plaintiff can recover from the defendant any money belonging to the plaintiff, obtained from him through mistake, fraud or deceit. It lies to recover money in the possession of the defendant which in justice and good conscience belongs to the plaintiff, and the defendant under the general issue may rely upon any just ground of defense that may show he was not bound to pay it. *Penn* v. *Flack,* 3 G. & J. 370; *Blair* v. *Blair,* 39 Md. 556; *Mills* v. *Bailey,* 88 Md. 320; 1 *Poe's Pleading,* 117-124.

In this case, we are not prepared to hold that there was no evidence legally sufficient to require the case to be submitted to the jury, under the undisputed evidence set out in the Record, and for the reasons stated, the judgment must be reversed and a new trial will be awarded.

*Judgment reversed and a new trial awarded, the appellee to pay the costs.*