IN THE MATTER OF THE ESTATE OF JOHN KNAPP, DECEASED.

*Walter C. Mylander* and *Joseph S. Knapp, Jr.*, for exceptants.

*Duncan, Schwatka & Flynn* for respondent.

GAITHER, J.—

The matters in controversy in this proceeding arise out of exceptions filed by two of the distributees of the deceased, being his only two children, to the First Administration Account of Mary M. Knapp and Daniel W. Schilling, executors named in the will of the decedent. Under a caveat proceeding filed by the children, the will was heretofore set aside.

The exceptions are seven in number. We will take them up in the order set out, except as to one relating to the validity of the marriage of John Knapp and Mary M. Newell, the latter will be designated herein as the wife or widow of the decedent.

The first and second exceptions embrace the allowance of commissions to the executors.

On these exceptions the Court will reserve its decision until an administrator to complete the administration of the estate is appointed, so that an equitable division of the whole commissions may be made between the executors and the administrator.

As to the exception to the charge in the account of the $300 counsel fee heretofore allowed, subject to exceptions: We find from the evidence (being the Court papers in the equity suit) that the bill of complaint filed by the plaintiff therein did more than make the executors nominal parties, in fact, charges were made against them, and among the prayers for relief was one asking the Court to take jurisdiction of the estate and appoint a receiver thereof. We are of opinion that the executors had the right and privilege of defending themselves and of denying the allegations, if in their opinion they ought to be denied, and as it was sought to deprive them of their office, of executors, they also had the same right to oppose the appointment of a receiver, even if it was not their duty so to do. That it was proper for them to engage counsel to represent them in the proceeding. That counsel did appear and file answers for them and attended one or more hearings of the case. As the will of John Knapp was broken and set aside, the executors as such will have no further interest in defending that cause, therefore, we will consider the fee allowed as a final one. We will dismiss this exception.

As to the exception to the amount of the funeral bill, we understand from counsel for exceptants, that this exception is abandoned, therefore, the charge will be allowed to stand as charged in the account.

As to the matter of the stenographer's fees for transcribing the evidence in the caveat case, it having been agreed by counsel at this hearing that an additional amount, being for other copies of the evidence shall be charged to the estate, the additional amount so agreed upon will be allowed the executors in an amended account to be hereafter stated.

As to the matter of the rents collected by the executors from certain house property being part of the estate —We find that they have properly charged themselves with same up to the month of December, 1924, and they will be required to further charge themselves with rents received since that date in an amended account. The executors declare themselves ready and

willing so to do. This exception will be dismissed.

We now come to the most important exception, being the one involving the validity of the marriage between the decedent and his wife. There is abundant evidence of the fact that a marriage ceremony was performed between the parties by a certain Leland W. Windsor holding himself out and reputed to be a minister of the gospel. Mr. Windsor testified that he performed the marriage ceremony believing he had a right to do so under the certificate of ordination in evidence, by which he was ordained a minister of the Apostolic Church of Philadelphia, with express authority to perform marriage rites. That he was ordained by Mr. Atwood, one of the signers to the certificate. That afterwards he received by mail from Philadelphia the certificate signed by Mr. Atwood, Mr. Grieg and Mr. Johnson. That there was delivered to him at the time of the ceremony the marriage license and that he gave the parties a certificate of marriage and afterwards returned the certificate required by law, to the clerk of the Court of Common Pleas. That he had previously married three other couples. Mr. Grieg and Mr. Johnson both testified that they were elders of the church and had signed the certificate of ordination in evidence. That Mr. Atwood is not living. Mr. Grieg stated that the word "elder" in their church was considered to have the same meaning as that of minister in other denominations. That at the time of the issuing of the ordination certificate there was such a religious body as the Apostolic Church of Philadelphia and that it had various places of worship in that city. The evidence further showed the parties to the marriage considered themselves married. That they lived together as husband and wife, cohabited, and that they were recognized as such in the community where they resided and generally. To the return of the certificate to the Clerk of the Court of Common Pleas it was shown that after the signature of Mr. Windsor there is added the words "Pastor of the Cummins Memorial Reformed Episcopal Church." There was evidence that Windsor was not an ordained minister of the Reformed Episcopal Church. We will not review this evidence for the reason that it matters not for the purpose of this case whether he was an ordained minister of the Reformed Episcopal Church or whether he was entitled to subscribe himself as such, as Windsor relied upon the ordination certificate for his authority to perform the ceremony and we are to decide whether under all the evidence in the case and the law applicable thereto the marriage is or not a valid one.

The only evidence of the exceptants regarding the right of Windsor to perform the marriage ceremony was that of Bishop Rudolph, a Bishop of the Reformed Episcopal Church. He testified that Windsor was not an ordained minister of the Reformed Episcopal Church. He further testified that he made an investigation in Philadelphia to discover whether there was such a religious body as the Apostolic Church. He could not find that there was such. His evidence regarding the Apostolic Church is merely negative, while we have the positive testimony of Mr. Grieg and Mr. Johnson that there was such a church or religious body. In the Denison case, 35 Md. at page 380, Judge Alvey in delivering the opinion of the Court, states "To constitute lawful marriage here there must be superadded to the civil contract, some religious ceremony. The law, however, does not prescribe the form, nor according to the rites of what church the marriage shall be celebrated."

In the case of Shaffer vs. Richardson, 125 Md. at page 92, Judge Burke in the opinion of the Court says: "When it is shown that the marriage was solemnized by a person acting as a minister and followed by cohabitation, it will be presumed that the person assuming to officiate at the ceremony was authorized to perform it, that a license was properly issued and that in the absence of additional or countervailing proof, it will be presumed that all the proceedings were regular and valid." So in this case we have both the positive evidence that the officiating party was a minister of the gospel as well as the legal presumption of the validity of the marriage.

And in 26 Cyc. 859 we find this text: "Unless expressly provided by statute, a marriage solemnized by an unauthorized person is not void where the parties assent to the marriage and it is acknowledged and consummated by co-

habitation as husband and wife." See cases cited in Note 41.

Section 359 of Article 27 of Bagby's Code of 1924 provides a penalty of $500, to be imposed on an unauthorized party celebrating the rites of matrimony. It is the law of this State as stated in a line of cases, beginning with Jones vs. Jones, 45 Md. 159, that where a fine is imposed by the statute, it constitutes a recognition of the validity of the act illegally done. See also the case to like effect in 2 N. H. 268, quoted by counsel for exceptants in their brief.

The law presumes morality, marriage and legitimacy and goes very far to sustain marriage when the parties believe themselves to have been married, and where the party performing the ceremony acted in good faith and believed he had the right to do so. We have here evidence of the ordination of the minister and no such strong, satisfactory and countervailing proof to the contrary as is required by law of the parties assailing the marriage, and the burden of proof is placed upon them, besides the legal presumption favoring the validity of marriages such as this.

Upon the evidence and the law and particularly relying upon the cases and the statute law cited, we are of opinion that the marriage is valid. The widow is entitled to the allowance made her, as such, in the account and the exception will be dismissed.

The Court will sign an order in accordance with this opinion. Costs to be paid by exceptants.