(No. 10901.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN KINGCANNON, Plaintiff in Error.

*Opinion filed December 21, 1916.*

1. CRIMINAL LAW—*when an allegation that prosecutrix was not the wife of accused is essential.* In a count charging the crime of rape without force an allegation that the prosecutrix was not the wife of the accused is essential, and the omission is fatal on motion in arrest of judgment.

2. SAME—*when counts are not subject to objection of duplicity.* Counts of an indictment for rape are not subject to the objection of duplicity merely because they charge both rape and assault with intent to commit rape, as the crime of rape necessarily includes the assault whether it is specifically charged or not.

3. SAME—*an objection of duplicity cannot be raised on motion in arrest.* An objection that a count in an indictment for rape is double cannot be raised by motion in arrest of judgment.

4. SAME—*one good count is sufficient to sustain general verdict of conviction.* One good count in an indictment, if it is supported by the evidence, is sufficient to sustain a judgment of conviction.

5. SAME—*proof of age of prosecutrix is essential to establish the offense of rape without force.* To establish the offense of rape without force, proof that the prosecutrix was under the age of consent is essential.

6. SAME—*when admission of a birth certificate to show age of prosecutrix is prejudicial error.* Admitting in evidence, in a prosecution for rape, a birth certificate showing the date of the birth of the second child of the father and mother of the prosecutrix is prejudicial error, where the name of the child is not given in the certificate and there is no evidence to show that it was the certificate of the birth of the prosecutrix, particularly where the testimony of the prosecutrix as to her age is contradictory.

7. SAME—*proof that child is a negro is proper in a prosecution for rape.* In a prosecution for rape, where both the prosecutrix and the accused are negroes, it is proper to show that the child of the prosecutrix is a negro.

8. SAME—*proof that child of the prosecutrix had supernumerary fingers is competent.* In a prosecution for rape, where the prosecutrix has testified that she had heard the putative father say that he once had a supernumerary finger, which had been amputated, it is proper to prove by the testimony of a physician, without exhibiting

the child of the prosecutrix, that such child had a supernumerary finger and that such a trait is usually hereditary; and the fact that he is unable to give the names of the books on which he bases his statement as to heredity does not render the evidence inadmissible, nor does the fact that the accused denies that he ever had a supernumerary finger and physicians testify that his hands show no signs of an amputation.

Farmer and Cooke, JJ., dissenting.

Writ of Error to the Circuit Court of Winnebago county; the Hon. Arthur H. Frost, Judge, presiding.

J. E. Goembel, (Roy F. Hall, of counsel,) for plaintiff in error.

P. J. Lucey, Attorney General, George P. Ramsey, and D. E. Detrich, (William Johnson, Special State's Attorney, of counsel,) for the People.

Mr. Justice Duncan delivered the opinion of the court:

Plaintiff in error, John Kingcannon, was convicted in the circuit court of Winnebago county of the crime of rape and by the judgment of the court was sentenced to imprisonment in the penitentiary for the term of five years.

The first count of the indictment charges plaintiff in error with statutory rape, and avers, in substance, that he was on July 10, 1915, a male person of the age of seventeen years and upwards, and that on said day, in said county, he unlawfully and feloniously did make an assault upon Rosie Hunt, then and there being a female person under the age of sixteen years, to-wit, of the age of fifteen years, and not then and there his wife, with intent her, the said Rosie Hunt, then and there unlawfully and feloniously to ravish and carnally know, and did then and there unlawfully and feloniously ravish and carnally know her, contrary to the form of the statute, etc. The second count charges the same offense in substantially the same words, except that it omits

the averment that Rosie Hunt was not then and there the wife of John Kingcannon. The third count contains the same averments in substantially the same terms as the first count, except that in the charge of rape it is averred that the rape was committed forcibly and against her will. The sufficiency of the indictment was challenged by motion in arrest of judgment only.

The objection that the second count of the indictment is fatally defective for failure to allege that the prosecutrix was not the wife of plaintiff in error must be sustained. Such an allegation in a count charging rape without force is material and necessary, and a failure to make that allegation is fatal on motion in arrest of judgment. *People* v. *Stowers,* 254 Ill. 588.

The first and third counts are good as against a motion to quash and in arrest of judgment had both of these motions been made by the plaintiff in error. The contention that both of these counts are bad because they are double and charge two offenses,—rape and assault with intent to rape,—is not tenable. The counts do charge both of those offenses. Every indictment for rape, if sufficient, necessarily includes the charge of assault with intent to commit rape, whether or not the assault with intent to commit rape is specifically and separately charged in the same count. So a charge of murder includes an assault with intent to murder, and it is customary in the same count for murder to first charge, specifically and separately, the assault to murder, followed by the charge of murder. Neither rape nor murder can be committed without committing the lesser offense of assault to rape or assault to murder. So in charging rape the same count of the indictment may charge specifically both the offenses of rape and assault with intent to rape, as was done in this case, and such a count is not bad for duplicity. But if the count could be regarded as double such a defect cannot be taken advantage of by a motion in arrest of judgment. (Hurd's Stat. 1916, chap. 38, div. 11,

sec. 9; Moore on Crim. Law, sec. 833.) If an indictment contains one good count it is sufficient to sustain a general verdict of conviction. *Thomas* v. *People,* 113 Ill. 531; *People* v. *Smith,* 239 id. 91.

The only positive testimony in the record that plaintiff in error had sexual intercourse with prosecutrix is her own evidence. She was corroborated by the circumstance that she had given birth to a negro child, she and the plaintiff in error also belonging to the negro race. The evidence further discloses that the prosecutrix was placed in the care of plaintiff in error and his wife when she was about ten years of age by a Mrs. Joslin, a probation officer, and that she continued to be a member of his family until a short time before her child was born, when he sent her to Chicago with a preacher, Payton M. Jones, with whom she lived about a month. The prosecutrix testified that plaintiff in error had sexual intercourse with her many times during June and July, 1915, and that as a result thereof she gave birth to the child March 16, 1916, and that she was sixteen years old on March 2, 1916; that plaintiff in error sent her to Chicago for the purpose of concealing her condition and told her to keep off of certain streets there, because certain people might see her and tell the people in Rockford of her condition, and asked her not to tell anyone that he got her in that condition. Plaintiff in error denied substantially every statement made by the prosecutrix showing or tending to show his guilt, and further testified that the girl told him that the child was begotten by an old colored fellow by the name of Barnes, and claimed that he sent her to live with the preacher, Jones, and his family to protect her, and that he paid Jones for keeping her because she was living in his family and he thought it was his duty to care for her. Mrs. Jones testified that the prosecutrix told her, while in Chicago, that a man by the name of Smith was the father of her child, and on another occasion told her that a young man about eighteen years of

age was its father. The testimony of the prosecutrix at the preliminary examination was shown to differ in several particulars from her testimony given on the trial as to how and when and the number of times she claimed to have had sexual intercourse with plaintiff in error. Her statements to the effect that she hallooed every time he had intercourse with her and tried to get away from him, and that those acts took place in the basement of plaintiff in error's home while his wife and a woman boarder were just above them on the next floor and did not hear her, and that she never told anyone until September, 1915, are referred to by the plaintiff in error as unreasonable and not worthy of belief. The prosecutrix also admitted that she visited the old man Barnes when alone as often as twice a week, although his daughter had sent word to her not to go to his house when she was not there. She admitted that she stated to Mrs. Kingcannon that old man Barnes was the father of her child, but stated that she did so because plaintiff in error told her that he would break her neck if she didn't make that statement.

The judgment cannot be affirmed, under the evidence in this record, because of the errors committed by the court in its rulings on the evidence over plaintiff in error's objections, and it is not proper, therefore, at this time, for us to discuss the evidence on the merits, except to say that the evidence does not satisfactorily prove that the plaintiff in error was guilty of common law rape or rape by force. To establish the *corpus delicti* in a case where rape without force is charged, it is necessary to prove, first, that the female was under the age of sixteen years; second, that the male was over the age of seventeen; third, that sexual intercourse occurred between the parties. (Hurd's Stat. 1916, chap. 38, sec. 237; *Wistrand* v. *People*, 213 Ill. 72.) It was necessary, therefore, that the jury find from the evidence, beyond a reasonable doubt, that the prosecutrix was under the age of sixteen years. She admitted on her cross-

examination that she had testified on the preliminary that she was seven years old when she went to live in the country; that she then lived with Barnes for two years, and afterwards lived on Greenmount street, in Rockford, for three years, and that after that she lived at Kingcannon's for five years. That evidence tends strongly to show that she was over sixteen years of age in June, 1915, at which time she claimed the first act of intercourse occurred. For the purpose of clearing up the doubts as to what her age really was, the defendant in error offered in evidence a birth record of the county clerk's office, signed by Dr. S. R. Catlin. The certificate gave the name of the child as . . . . . . . . Hunt, and then described it as a "female, negro, mother's second child," and gave its date of birth as March 2, 1900, at Rockford Hospital. It also gave the age and residence and full name and address of the mother and father. Dr. Catlin was called as a witness and could only identify the certificate as the one signed by himself. He positively stated that he had no personal recollection of the matter at all. There is no evidence in this record showing that the certificate was the birth certificate of the prosecutrix or that the prosecutrix was the second child of the parents therein named. The prosecutrix testified that her father's and mother's names were the same as those named in the certicate. There is no evidence in the record to show whether the first child of her parents was a male or female. The proof was therefore insufficient to admit the certificate in evidence, and the admission of it in evidence was upon a material point and very prejudicial to plaintiff in error, in view of the further fact that the testimony of the prosecutrix was contradictory and showed that she really did not know for a certainty her age and was the only witness who testified as to her age.

Plaintiff in error insists that the court erred in permitting the State to prove the child in question was a negro child, and in admitting the testimony of the prosecutrix

that in June, 1915, she heard him say that he had had six fingers and that they bothered him so he had them taken off when he was young. This testimony was followed by the testimony of a physician that the child of the prosecutrix had a rudimentary or supernumerary finger proceeding from the middle or second joint of each little finger, "with a beginning nail." He further testified that in his opinion supernumerary fingers "are usually an hereditary trait." He stated, also, that his opinion was based entirely upon books that he had read, and was unable to give the names of any books that he had read on that subject. The court overruled plaintiff in error's objection to all this evidence that it was irrelevant and improper, and afterwards refused, on motion, to exclude it from the jury. Plaintiff in error testified that he had never said in her presence, or at any time, that he had had six fingers on his hands, or on either of them, and had them amputated; that he never had a supernumerary finger, and that none of his relatives ever had, so far as he knew or had heard. Three physicians examined his hands and testified that there was no evidence that he had ever had any such finger on either of his hands nor signs of such amputations. The only authorities relied on by plaintiff in error to sustain his position that the foregoing evidence is inadmissible are those holding that it is not permissible to introduce evidence of family resemblance between a child and the putative father to prove the paternity of the child. It is perhaps true that the weight of authority in this country is against the admission of parole evidence to prove the resemblance of the child to the putative father, and that evidence of family resemblance, by a view by the jury and a comparison of the child with the putative father, is inadmissible for the same purpose if the child has not attained an age when its features have assumed some degree of maturity and permanency. The authorities are in very great conflict as to whether or not such view and comparison may be had of a child for such pur-

276 — 17

pose when its features have assumed, in the judgment of the court, that degree of maturity and permanency that the resemblance or the lack of it may be expected to continue. By the weight of authority the rule is well established that the child, at any age, may be exhibited to the jury for the purpose of proving its race, when that question is a material one in the case. *Hanawalt* v. *State,* 54 Am. Rep. (Wis.) 588, *State* v. *Harvey,* 52 L. R. A. (Iowa,) 500, and numerous authorities cited in notes to said two cases.

Supernumerary fingers and toes, or polydactylism, are usually considered by law writers under the general head of malformations, and are regarded by well recognized authorities as being hereditary and frequently caused by consanguinous marriages. Upon the authority of Dr. Thompson, surgeon to the general prison of Scotland, it is stated in Wharton & Stille's Medical Jurisprudence (vol. 1, sec. 367,) that epilepsy, dipsomania, spinal deformities, stammering, imperfect organs of speech, club-feet, cleft palates, harelip, deafness, paralysis, and similar marks of physical degeneration, accompany the hereditary lines of abnormal condi- · tions of the human family. The testimony of the physician in this case that supernumerary fingers are usually hereditary stands uncontradicted in the record, and we think the evidence was admissible. The child was not exhibited in evidence. The testimony that it had supernumerary fingers was not the mere statement of a conclusion or an opinion by the witness but the statement of a fact, and it was proper to so prove it without the exhibition of the child. The rule is well established in this State that where the sanity or insanity of an individual is the subject of judicial investigation and there is other evidence tending to show mental unsoundness, it is competent to show the insanity of his collateral blood relations without making proof that the insanity from which they suffered was hereditary in character. (*Dillman* v. *McDanel,* 222 Ill. 276.) By analogy,

where the proof shows, or tends to show, that the putative father had, or had had, supernumerary fingers and that the child also had them, we think such evidence is competent as tending to show the paternity of the child, when accompanied by the further evidence that supernumerary fingers are usually hereditary and by the positive testimony of the prosecutrix that he is the father of the child. Such evidence ought to be regarded as a mere circumstance that might be of value in deciding a doubtful case. In Beck's Medical Jurisprudence, in speaking of this character of evidence, the author makes use of the following words: "It has been suggested that the resemblance of a child to the supposed father might aid in deciding doubtful cases. This, however, is a very uncertain source of reliance. We daily observe the most striking differences in physical traits between parent and child, while individuals born in different parts of the globe have been mistaken for each other. And even as to malformations, although some remarkable resemblances in this respect have been noted between father and child, yet we should act unwisely in relying too much on them."

It is further suggested by plaintiff in error's counsel that the evidence in this case is overwhelming that plaintiff in error had no such fingers. This is merely a question for the jury when properly presented to them without errors in the record. In this opinion we are not passing upon the weight of the evidence but merely as to its admissibility.

There was evidence in this record tending strongly to show that the plaintiff in error had a good reputation for chastity. There was also evidence introduced by the People to the contrary. In his opening argument to the jury the prosecuting attorney said, "Did you notice that there was no effort made to make any investigation of the official records in this county?" He also made other insinuations in his argument that plaintiff in error had been arrested on charges involving chastity, although the record contains no

such evidence and could not properly contain such evidence, as it is clearly inadmissible. While the court sustained an objection to the foregoing remarks, still it is not possible for us to say what effect the prejudicial remarks had on the jury. Their natural tendency must be considered as prejudicial to the plaintiff in error's case.

The eighth instruction contained a slight error. The concluding part thereof read thus, "You are not at liberty to disbelieve as jurors if you believe as men." The instruction should have concluded with the words, "if from the evidence you believe as men."

By reason of the foregoing errors we are of the opinion that the judgment of the court should be reversed and the cause remanded for further trial.

*Reversed and remanded.*

FARMER and COOKE, JJ., dissenting.