CHARLOTTE LOHSEN *v.* E. A. LAWSON.

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and
SHERBURNE, JJ.

Opinion filed October 2, 1934.

*Clifton L. Drew* and *Harry B. Amey* for the defendant.

*James B. Campbell* for the plaintiff.

SHERBURNE, J. This is a bastardy proceeding and comes here upon exceptions by the defendant. A normal child was born to the plaintiff on June 28, 1933, which could have been begotten during the period from about the first of September to about the 12th of October, 1932. The defendant denied any intercourse with the plaintiff, and introduced evidence tending to show that the child belonged to another.

Early in the direct examination of Burton Allard, a witness called by the defendant, he was asked if he had intercourse with the plaintiff during the last of August, 1932. This question was excluded. Then he was asked: "Was there a time on or about the 15th day of September, 1932, that you had intercourse with this young lady?" This was excluded as asked. If there was any error in excluding these questions, it was harmless, as later in the same direct examination he was permitted to testify to acts of intercourse with the plaintiff on or about August 31, about the middle of September, and during the latter part of September, 1932. *Turgeon* v. *Baker*, 105 Vt. 61, 63, 163 Atl. 588.

Mrs. Irene Baker, a witness called by the defendant, testified to an occasion about the 17th day of September, 1932, at about 10.30 p.m., when by the lights of her automobile she saw the plaintiff and Wallace Carter in a car parked by a hedge. In answer to a question she testified: "Well, all I saw was a lot of rustling around getting back into place." She was then asked: "Do you know whether he had his arms around her at the time, could you see?" This was objected to as leading, and the court asked: "Well, are you going to show that they had intercourse?" and the defendant's counsel replied: "Show that they were in a very intimate position at the time." Upon the exclusion of the question, the counsel offered to show "that in the latter part of September, Mrs. Baker went up to the Lawson farm, her headlights were shining on a car that was occupied

by this plaintiff and a boy by the name of Carter and she was there in the inside of the car. At that time Carter had his arms around this plaintiff and was hugging her and was close to her." This was excluded subject to exception. The defendant now claims that this was sufficient to show sexual intercourse, but in response to the court's question he did not make that claim; hence, it is not available here. *Cummings* v. *Connecticut Gen. Life Ins. Co.*, 101 Vt. 73, 79, 142 Atl. 82. There had been no previous testimony about Carter tending to show improper relations with the plaintiff, and there being no claim of intercourse on this occasion, the offered evidence was immaterial. *Maloney* v. *Piper*, 105 Mass. 233; 7 C. J. 990.

During the cross-examination of the last witness she was asked: "Where is your husband now?" Upon objection being interposed, plaintiff's counsel said: "I offer to show that her husband is in jail." Whereupon the court said: "Well, you can disregard that gentleman." Upon defendant asking for an exception to the remark, the court said: "You should retract that," and plaintiff's counsel replied: "I will," and the court said: "And you should disregard it." Defendant's counsel then said: "I want an exception nevertheless," and the court replied: "That comes last. Now you should disregard what Mr. Campbell said. It was an improper thing to say and he realizes it now, and you pay no attention to whether he is in jail or isn't in jail is no concern of yours," and allowed an exception. The remark was improper, but in view of the retraction and the remarks of the court, we think the error was sufficiently cured and rendered harmless. *State* v. *Marini*, 106 Vt. 126, 144, 170 A. 110, 117; *State* v. *Stacy*, 104 Vt. 379, 404, 160 Atl. 257, 747. We cannot assume that the jury did not give due weight to what the court said. *State* v. *Marini, supra; State* v. *Stacy, supra*. The defendant now argues that the retraction was insufficient. This objection was not made below, so we will not consider it here. *State* v. *Marini, supra*.

Mrs. Lawson, defendant's wife, testified to seeing Wallace Carter and the plaintiff in an automobile by the hedge fence, which was presumably the same occasion testified to as above by Irene Baker. She was asked: "Could you see what they were doing when they were by the hedge fence?" and answered: "They were pretty close together." Plaintiff asked to have the answer struck out, and the court did so. All that

defendant's counsel said was: "I want an exception to that. I think that kind of evidence is admissible." This answer was sufficiently irresponsive for the court to strike it out in the exercise of its discretion. Hence error does not appear.

■ ■ It appeared that the plaintiff worked at defendant's house from May to July, 1932, and returned on August 22 and remained through September. Her evidence tended to show that she was also there until the latter part of October, except that she went home October 5 and returned October 10. During the direct examination of Mrs. Lawson she was asked whether or not she saw the plaintiff leave her home with Allard at different times. An objection was interposed and defendant's counsel said: "I want to offer to show that on many occasions during the month of September Charlotte Lohsen, the plaintiff, was away from the Lawson place with Burton Allard and that frequently she came back at two o'clock in the morning and that on different occasions Mrs. Lawson used to go after her to find out where she was and she was out nights away from the place almost habitually in the night. She says that she never left the place." In his brief the defendant now says in effect that this evidence, if received, would have corroborated the testimony of Burton Allard about his relations with the plaintiff and that "it was plainly admissible for two reasons, to show the relations of the parties, their intimacy, and as impeachment of the plaintiff's testimony." We need not determine whether the court should have so interpreted the offer because the question was properly excluded on the offer made. That part of the offer that the witness "on different occasions went after her to find out where she was," at least in the absence of any showing that she found her, was wholly irrelevant and inadmissible. Our rule is that, when a part of an entire offer is inadmissible the whole may be properly excluded. *Turgeon* v. *Baker, supra,* at page 63 of 105 Vt., 163 Atl. 588, and cases cited.

After the plaintiff rested, defendant's counsel claiming that the child was admissible, notified plaintiff's counsel in the presence of the court to have it available so that it could be brought in. Whereupon the court inquired as to its age, and was informed by plaintiff's counsel that it was born on June 28 and that he had it in court. Later on, after several witnesses had testified for the defendant, counsel came to the bench and de-

fendant's counsel said: "We desire to make a motion for the production of the child and exhibition of the child to the jury for the reason that the child has a striking resemblance to Burton Allard. That is for the purpose of showing that he is the father of the child." The court after inquiry as to the age of the child, and being informed that it was in court and was less than six months old, and was born on June 28, prior to the date of the trial, which was December 12, said: "Well, we won't make an order that they shall produce a child of that age," and allowed the defendant an exception.

The question as to the propriety of exhibiting a child to the jury as evidence of its alleged paternity has never been before this Court. "The English practice seems always to have admitted this evidence without question. In the United States the early practice was probably the same but as the chief use of the evidence was found in filiation proceedings, to charge the defendant with the paternity of a bastard, the possible abuses of the evidence led to an unfortunate questioning of its validity under any circumstances." Wigmore on Evidence § 166. An examination of the decisions of other states now reveals an irreconcilable conflict upon this question. On the one hand, it is maintained "that in the case of very young infants, at least, it is improper to exhibit them, on the ground that such evidence is too vague, uncertain, and fanciful, and, if allowed, would establish not only an unwise, but a dangerous and uncertain rule of evidence, and that while it may be a well known physiological fact that peculiarities of form, feature, and personal traits are oftentimes transmitted from parent to child, yet it is equally true as a matter of common, knowledge that during the first few weeks, or even months, of a child's existence, it has that peculiar immaturity of features which characterize it as an infant, and that it changes often and very much in looks and appearance during that period. Resemblance can then be readily imagined. This is oftentimes the case. Frequently such resemblances are purely notional or imaginary. What may be considered a resemblance by one may not be perceived by another having equal knowledge of the parties between whom the resemblance is supposed to exist. The rule that the exhibition of a very young infant is improper has been applied in the case of a child six weeks old, three months old, nine months old, and about a year old. On the other hand, it

is maintained "that a child may be exhibited to the jury as evidence of alleged paternity, and as a rule the authorities have laid down the doctrine flatly with no intimation that it was in any way affected by the age of the child. The reason for the doctrine is that the weight to be given to the testimony is for the jury, and its weakness or uncertainty affords no reason for excluding it." We have quoted from 3 R. C. L. p. 764, in making this summary. See, also, notes, 40 A. L. R. 97, and 6 Ann. Cas. 560. Among our neighboring states Maine adheres to the first proposition. In *Clark* v. *Bradstreet,* (1888), 80 Me. 454, 15 Atl. 56, 6 A. S. R. 221, a child of six weeks was found too young to be exhibited. This was followed by *Overlook* v. *Hall* (1889), 81 Me. 348, 17 Atl. 169, holding a child six months old too young. Massachusetts, on the other hand, adheres to the last proposition. In *Scott* v. *Donovan* (1891), 153 Mass. 378, 26 N. E. 871, 872, a child less than three months old was held properly admitted in evidence to show resemblance, and Holmes, J., speaking for the court, said: "We see no sufficient reason * * * for taking a distinction according to age. The youth of the child goes rather to the weight of the evidence."

If all individuals developed by a fixed rule, it might be possible to fix upon a certain age below which the child should not be exhibited as evidence on this issue; but it is a well-known fact that children vary in development at stated ages; some show considerable maturity of features at a very early age, whereas others do not do so until much later. Consequently we think the middle ground suggested in Wigmore on Evidence, § 166, that "the sound rule is to admit the fact of similarity of specific traits, however presented, provided the child is in the opinion of the trial court old enough to possess settled features or other corporal indications," is the more reasonable to adopt, subject to the qualification that we would not necessarily limit the evidence to specific traits because of the possibility of a case arising of an unmistakable family resemblance which cannot be analyzed. Among the cases following Mr. Wigmore's rule are: *Flores* v. *State* (1916), 72 Fla. 302, 73 So. 234, 235, L. R. A. 1917B, 1143, and *State* v. *Anderson* (1924), 63 Utah, 171, 224 Pac. 442, 40 A. L. R. 94. In a well-considered case from New Hampshire, *State* v. *Danforth* (1905), 73 N. H. 215, 60 Atl. 839, 842, 111 A. S. R. 600, 6 Ann. Cas. 557, the state was permitted to exhibit the child to the jury and to argue from peculi-

arities of features claimed to be common to the child and the defendant and from a general resemblance between them. The court after discussing the practice, quoted approvingly the rule laid down by Wigmore, but said: "Whether it should be here followed is a question which the present case does not raise for decision."

Under this rule we think that the granting or denying of a motion for the exhibition of the child to the jury rests in the sound discretion of the trial court. Starting off with the presumption that the court below exercised the discretion which the law required of it, we think that it plainly appears from the record that the court ruled as a matter of law and refused to exercise its discretion. It did not examine the child, but the same as said that any child of that age was too immature to have any probative value upon the matter of its paternity. This was prejudicial error.

*Judgment reversed, and cause remanded.*