[Civ. No. 20934.    First Dist., Div. Two.    Sept. 11, 1963.]

ROBERT GALLINA, a Minor, etc., Plaintiff and Appellant, v. ROBERT ANTONELLI, Defendant and Respondent.

Rebecca Wells Smith and Ollie M. Marie-Victoire for Plaintiff and Appellant.

Rettig, Dunn & Hart, W. B. Dunn and James A. Himmel for Defendant and Respondent.

SHOEMAKER, Acting P. J.—Plaintiff Robert Gallina, a minor, brought this filiation proceeding through his guardian *ad litem*, Sara Rose Gallina, to have it adjudged that defendant Robert Antonelli was the father of plaintiff and under a duty to support him. The trial court, sitting without a jury, entered judgment for defendant. Plaintiff appeals therefrom.

. Appellant's first contention is that the evidence was insufficient as a matter of law to support the trial court's finding that respondent was not his father. This argument is without merit. The evidence relative to paternity consisted of the conflicting testimony of appellant's mother, Sara Rose Gallina, and of respondent Robert Antonelli. This conflict in the evidence presented a question of fact for the trial judge, and it cannot be said as a matter of law that he erred in choosing to believe respondent rather than Miss Gallina.

Neither is there any merit to appellant's contention that respondent's testimony was inherently improbable because he admitted acts of sexual intercourse with Miss Gallina and denied only that they had occurred during the period when, in the ordinary course of nature, appellant must have been conceived. It must be remembered that Miss Gallina herself testified that she and respondent had terminated their

relationship in 1957. Respondent's testimony that the relationship was never reestablished is certainly no more improbable than Miss Gallina's testimony that she and respondent were reunited for one further act of intercourse at the approximate time of appellant's conception.

Appellant's second contention is that the trial court erred in admitting evidence of Miss Gallina's sexual relations with other men prior to the date of appellant's conception.

Appellant is clearly correct in such contention. The law is well settled that, in filiation proceedings, evidence of the immorality of the mother prior to the period of possible conception is inadmissible, and it is error even to ask questions which are designed to imply acts of immorality for the purpose of showing bad character, or for impeachment. (*Estate of Gird* (1910) 157 Cal. 534, 547 [108 P. 499, 137 Am. St. Rep. 131]; *Peterson* v. *Peterson* (1953) 121 Cal.App. 2d 1, 6 [262 P.2d 613]; *Dastagir* v. *Dastagir* (1952) 109 Cal. App.2d 809, 815-816 [241 P.2d 656]; *Kyne* v. *Kyne* (1940) 38 Cal.App.2d 122, 131 [100 P.2d 806].) In view of the peculiar facts in the present case, however, it is apparent that appellant was in no way prejudiced by improper questions addressed to Miss Gallina, and the evidence adduced thereby. The fact is that appellant's own counsel, during examination of this witness, successfully eliminated all doubt as to her sexual morality, and covered the very matters of which she now complains.

Further, this was a court trial and hence we presume on appeal that the trial judge considered and relied upon the competent evidence in making his findings and rendering the judgment. (*Bixby* v. *Bixby* (1953) 120 Cal.App.2d 495, 499 [261 P.2d 286].)

It would serve no useful purpose to set forth in detail Miss Gallina's testimony on direct examination. Suffice it to say that her testimony left no doubt whatever as to the caliber of her morals. It is difficult to conceive of any reason why appellant's counsel would seek to vilify the character of Miss Gallina in this manner. The testimony particularly pertaining to abnormal sexual acts was totally irrelevant to the issue of paternity. Whatever the motives of appellant's counsel may have been, however, it is apparent that the information elicited through direct examination left appellant in no position to claim prejudice by the relatively innocuous questions which the trial judge and respondent's counsel subsequently addressed to Miss Gallina.

■ Appellant next contends that the trial court erred in refusing to permit appellant to be brought into court. Appellant correctly points out that at the conclusion of Miss Gallina's testimony, appellant's counsel asked the trial judge whether he would permit appellant, a child then 20 months of age, to be brought into court for the purpose of observing his resemblance to respondent. The trial judge stated, "No, don't ask me to pass upon the resemblance of the child . . . . I couldn't see the resemblance when everybody in the world can see a resemblance. In other words, I can when they are twins; but other than that, speaking candidly, when mothers or parents say, 'You look like somebody, you look like somebody,' as far as I am concerned they all look alike."

Appellant, in contending that this ruling constituted prejudicial error, relies upon the rule that it is entirely proper for the trier of fact to view the minor plaintiff in a paternity action. (*In re Jessup* (1889) 81 Cal. 408, 417-418 [21 P. 976, 22 P. 748, 6 L.R.A. 594] ; *Valencia* v. *Millikin* (1916) 31 Cal.App. 533, 535-536 [160 P. 1086].) However, appellant has directed this court's attention to no case holding that the refusal to undertake such a view constitutes error. In the present case, the trial judge's position was that he could not see resemblances in young children even where they were strikingly apparent to others. Under such circumstances, it would clearly have served no useful purpose to allow appellant to be brought into court. Appellant has not sustained the burden of showing either that error was committed or that he was prejudiced thereby.

■ Appellant's final contention is that the trial judge was biased and prejudiced against appellant's mother and accordingly prejudged the case. In support of this contention, appellant relies upon an incident which occurred during direct examination of Miss Gallina's brother, who had apparently been absent from the courtroom during her testimony. Appellant's counsel asked Mr. Gallina if he had any personal knowledge of what time his sister got home from dates. The trial judge then inquired as to the purpose of the question, and appellant's counsel replied that the purpose was to ascertain whether the witness had any knowledge of his sister's relationship with respondent. The following colloquy then took place: "THE COURT: Oh, heavens above, I don't think he knows; may he never know. THE WITNESS: I know. THE COURT: Do you know what your sister has done? THE WITNESS: I know that she knows that fellow

there. THE COURT: I mean — but do you know what she has done, what she has admitted? May you never know. THE WITNESS: What do you mean by that? THE COURT: Well, somebody else will tell you; I won't tell you.'' As further evidence of the trial judge's ''bias,'' appellant also relies upon a reference in the trial court's memorandum opinion to the ''astounding admissions'' made by Miss Gallina.

In the light of the unusual record in this case, it cannot be said that the learned trial judge's behavior indicated that he was prejudiced against Miss Gallina or that he had prejudged the case. Portions of her testimony were such as in their very nature could not help but shock the normal mind. The fact that the trial judge was admittedly astonished by some of her admissions certainly does not establish that he was unable to try the case fairly and to arrive at a decision based solely upon the competent evidence before him.

Judgment affirmed.

Agee, J., concurred.

A petition for a rehearing was denied September 30, 1963, and appellant's petition for a hearing by the Supreme Court was denied November 6, 1963. Peters, J., and Peek, J., were of the opinion that the petition should be granted.