## HERMAN DORSEY *v.* KARIN ENGLISH

[No. 165, September Term, 1977.]

*Decided September 14, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*John R. Foran,* with whom were *Horowitz, Oneglia, Goldstein & Foran, P.A.* on the brief, for appellant.

*W. Timothy Finan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

Karin English filed a petition to establish paternity of her son, Kevyn, in the Circuit Court for Prince George's County. On August 12, 1977, the matter was tried before a jury (Woods, J., presiding). During the course of the trial the child was exhibited to the jury and the mother was permitted to point out resemblances between the child and the alleged father, Herman Dorsey. The jury returned a verdict that Dorsey was the father and from the judgment entered thereon, he appealed to the Court of Special Appeals. We granted certiorari prior to consideration by that court.

English met Dorsey while she was an airline stewardess and while he was a member of the United States Air Force. They both agree that between 1971 and March of 1974 they were together in several different countries where they engaged in sexual intercourse. English discovered she was pregnant on July 30, 1974, and Kevyn was born March 8, 1975. The period of time in dispute is between March and July of 1974 when, despite Dorsey's denial, English claims that they had sexual relations. Both parties produced a witness to establish this relationship or lack of it during the critical period. Naomi Hendricks testified that English met Dorsey, who was wearing a mustache, at an airport in May or June 1974 and that the two of them drove off together. Jessie

Gaines testified that Dorsey, during May and July 1974, had a full beard because of a skin disease which prevented him from shaving. English testified that Dorsey acknowledged that he was the father and promised to send clothing and support for Kevyn, all of which Dorsey denied.

At the request of the State's Attorney, who represented English, the trial court permitted the child to be exhibited to the jury and allowed English to direct the jury's attention to points of resemblance between Kevyn and Dorsey, specifically that they both had unusually shaped ears and eyebrows, gaps in their teeth and the "same cheeks." The jury returned a verdict finding Dorsey to be "most likely" Kevyn's father. After Dorsey's motion for a new trial was denied and judgment was entered on the verdict, Dorsey instituted this appeal.

Dorsey makes a number of contentions. His primary complaint is that the trial court permitted the child to be exhibited to the jury. The propriety of exhibiting a child before a jury and permitting them to consider its resemblance to the alleged father as evidence of paternity presents an issue of first impression in Maryland. We note, however, that there is a sharp conflict of authority among our sister states which basically follow four approaches in resolving this issue.[1]

Some states never permit exhibition of a child. *See, e.g., Cook v. State,* 172 Tenn. 42, 109 S.W.2d 98 (1937). They reason that such a basis for comparison between a child and a putative father is speculative and tends to be prejudicial to the father. Other states allow the exhibition of the child without qualification, apparently based on the assumption that such evidence is inherently trustworthy. *See, e.g., Nimmo v. Sims,* 178 Ark. 1052, 13 S.W.2d 304 (1929). A third group allows exhibition of a child, provided a preliminary showing is made to insure that the evidence has some probative value. Most of this latter group have adopted some variation of the rule suggested by Professor Wigmore that "the sound rule is to admit the fact of similarity of specific

---

1. *See* 10 Am. Jur. 2d Bastards § 120 (1963); Annot., 95 A.L.R. 314, 315-19 (1934); Annot., 40 A.L.R. 97, 111-52, 163-67 (1924).

traits, *however presented,* provided the child is in the opinion of the trial court old enough to possess settled features or other corporal indications." J. Wigmore, *Evidence,* § 166, at 627 (3rd ed. 1940). *See Flores v. State,* 72 Fla. 302, 73 So. 234 (1916); *Hall v. Centolanza,* 28 N.J. Super. 391, 101 A. 2d 44 (1953); *State v. Powers,* 75 S. D. 209, 62 N.W.2d 764 (1954); *State v. Anderson,* 63 Utah 171, 224 P. 442 (1924); *Lohsen v. Lawson,* 106 Vt. 481, 174 A. 861 (1934). These states give the trial judge discretion in making a preliminary determination based on two factors,-age and specificity, in order to limit the exhibition of children to those who are sufficiently mature so that a comparison of the child and an adult will be reliable. Exhibition is permitted only respecting those traits for which testimony has been admitted.

The fourth approach is to leave the question of admissibility of resemblance evidence entirely to the sound discretion of the trial court. *See, e.g., Gallina v. Antonelli,* 220 Cal. App. 2d 63, 33 Cal. Rptr. 570 (1963); *Feagins v. Conn,* 160 Kan. 370, 162 P. 2d 76 (1945); *Kline v. St. Clair,* 151 N. E. 802 (Ohio App. 1925). *Feagins, supra,* explains the standard in this way:

> [I]t becomes the province of the trial court to exercise its discretion in the matter. If in the judgment of the trial court the exhibition of the child to the jury would appreciably tend to promote the purpose of the proceeding, the exhibition should be permitted. If, however, the trial court should be satisfied that no substantial advancement toward the truth would result from the exhibition, it should be forbidden. [162 P. 2d at 78.]

The rule thus stated commends itself as a practical and common sense rule in resolving the question of whether such demonstrative evidence has probative value and will tend to produce in the minds of the jury a persuasion, affirmative or negative, as to the fact of paternity and we adopt it. We will not interfere with the exercise of that discretion absent a showing of clear abuse. In the instant case, the trial court examined a child two years and five months old and compared his features with the alleged father. He then permitted the

child to be exhibited to the jury. Based on the record before us we find no abuse of his discretion.

Dorsey also poses the secondary issue of whether English should have been allowed to point out to the jury the particular physical features of Kevyn which she believed to be similar to Dorsey's. Specifically, she stated that their cheeks were the same, that they held their eyebrows in the same manner, that they both had gaps in their teeth, and that they both had an unusually shaped ear. No comment was made on general resemblance. Dorsey urges this Court to construe *Jones v. Jones,* 45 Md. 144 (1876) as forbidding this kind of testimony. In that case, one of the parties was trying to prove that he was the legitimate son of the deceased, whose estate was in contest. A third party was permitted to testify as to the physical resemblance that he perceived had existed between them. The Court, in holding that such testimony cannot be permitted, said:

> *Where the parties are [observed by] the jury, and the latter can make comparison for themselves,* whatever resemblance is discovered may be a circumstance, in connection with others, to be considered. But to allow third persons to testify as to their notions of the resemblance supposed to exist between parties, would be allowing that to be given as evidence upon which no rational conclusion could be based, but which might readily serve to mislead the jury. [45 Md. at 152-53] [emphasis supplied].

While the *Jones* holding could be read broadly to prohibit any testimony by someone other than the alleged father and child on the subject of physical similarity, we believe that the rule should be read in light of the facts in *Jones* before it can be properly applied to the case *sub judice.* The third party testimony in *Jones* was found to be unreliable because the alleged father was dead, and hence unavailable for comparison by the jury. Under these circumstances, the court was persuaded that such evidence was unreliable and usurped the function of the jury.

In the instant case English pointed out specific areas of resemblance between her son, Kevyn, and Dorsey, both of whom were present in the courtroom. Under these circumstances, the jury had ample opportunity to make a comparison and to weigh the probative force and reliability of the testimony of the witnesses. We are persuaded that, under the circumstances of this case, the trial court properly admitted English's testimony and that *Jones* is, therefore, distinguishable. *Compare People v. Kingcannon,* 276 Ill. 251, 114 N. E. 508 (1916); *Hall v. Centolanza, supra; State v. Morgan,* 31 N.C. App. 128, 228 S.E.2d 523 (1976); *Lawhead v. State,* 99 Okl. 197, 226 P. 376 (1924).

Dorsey next contends that the jury's verdict is unsupported by the evidence. The burden of proof in paternity cases is set forth in Maryland Code (1957, 1973 Repl. Vol.) Art. 16, § 66F (b); it is there provided: "[T]he burden is upon the petitioner or complainant to establish, by the weight of evidence required in other civil cases, that the defendant is the father of the child or children in question." The ultimate fact of paternity, then, must be established by a fair preponderance of affirmative evidence, *Corley v. Moore,* 236 Md. 241, 203 A. 2d 697 (1964).

In this case, each party had a witness. Naomi Hendricks testified that Dorsey in fact did meet with English after the date he alleged was their last meeting, and Jessie Gaines states that Dorsey had a beard at the time of the alleged meeting, contrary to the testimony of Hendricks', thus implying that the meeting had not occurred. Given the statutory requirement in a paternity case that the burden is as "in other civil cases," it follows that if the jury believed English, regardless of evidence to the contrary, her testimony standing alone was sufficient to support a finding of paternity. *See Peroti v. Williams,* 258 Md. 663, 670, 267 A. 2d 114 (1970); *Boob v. Fisher,* 225 Md. 278, 170 A. 2d 298 (1961); *Weil v. Lambert,* 183 Md. 233, 243, 37 A. 2d 312 (1944); *Roycroft v. Nellis,* 171 Md. 136, 142, 188 A. 20 (1936).

Dorsey further complains because the jury returned a verdict, stating, "[b]y way of the evidence, we do feel that Sergeant Dorsey is most likely the father of the child." He

says that the qualification of "most likely" failed to answer the question propounded by the court, "is he the father or isn't he the father." The court instructed the jury on the burden of proof by saying:

> In a civil case, the state is required to establish, by a fair preponderance of the evidence, that the defendant is the father of the child. When we say preponderance of the evidence, what we mean is that when you take the evidence that the state has offered and compared to what has opposed it, that the evidence of the state has a more convincing force, and produces in your minds a belief that it is *more likely* to be true than not. [emphasis supplied].

It is well settled that no particular form of words need be used by a jury in rendering its verdict. As long as the meaning is clearly conveyed, the verdict is legally sufficient. *See Faudree v. Iron City Sand & Gravel Co.,* 315 F. 2d 647 (3rd Cir. 1963); *Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 340 A. 2d 705 (1975); *K & G Co. v. Virginia Corp.,* 229 Md. 551, 184 A. 2d 827 (1962); *Davis v. Board of Education,* 168 Md. 74, 176 A. 878 (1935); *Mitchell v. Smith,* 4 Md. 403 (1853); *Sun Cab Co. v. Walston,* 15 Md. App. 113, 289 A. 2d 804 (1972), *aff'd,* 267 Md. 559 (1973). In the instant case, as pointed out by English, the addition of the words *most likely* essentially reiterated the language of the instruction in the definition of burden of proof. The words did not place any more uncertainty on the finding of paternity than the burden itself allows. This was an adequate verdict for a finding of paternity, and there was no error in accepting it as such. In any event, Dorsey failed to object to the jury's verdict and, therefore, any defect therein is deemed waived.

Dorsey next attacks Maryland's paternity statute, Maryland Code (1957, 1973 Repl. Vol., 1977 Cum. Supp.), Art. 16, § 66 A-O, as unconstitutional. He claims that there is no rational basis to treat him, the father, in the same way the mother is treated because the nexus between the act of intercourse and the birth of the child was broken by the mother's independent decision to bring the fetus to full term.

He relies on three cases, *Roe v. Wade,* 410 U. S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973), *Bellotti v. Baird,* 428 U. S. 132, 96 S. Ct. 2857, 49 L.Ed.2d 844 (1976) and *Planned Parenthood of Missouri v. Danforth,* 428 U. S. 52, 96 S. Ct. 2831, 49 L.Ed.2d 788 (1976), which upheld the right of the mother of an unborn child to choose to abort it without consulting the father. Thus, he claims his role in the birth of the child has become so attenuated that his circumstance is dissimilar from the mother and the statute treats him unequally.

Dorsey misreads the statute which seeks to place the burden of support of an illegitimate child on those responsible for its birth. Article 16, § 66A gives three reasons for its enactment:

> (1) the promotion of the general welfare and best interests of such children by securing to them, as near as practical, the same right to support, care and education as legitimate children; (2) the imposition upon both parents of such children the basic obligations and responsibilities of parenthood and (3) the simplification of procedures.

The clear intent of the statute is to impose upon both parents the obligations of parenthood by insuring that illegitimate children will enjoy the same right of support as legitimate children. "Parenthood" is, of course, not a suspect classification; thus the statute need only pass the rational basis test which:

> permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than other. *The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.* State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan v. Maryland,* 366 U.

S. 420, 425-26, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961) [emphasis supplied].

Here, there is a rational relation between the purpose of this statute and the means utilized to achieve it by placing the responsibility for a child's welfare and support on the parents. Thus, Dorsey's assertion of unequal treatment is specious. His voluntary act of intercourse with English carried with it the risk that she would become pregnant and bear a child. She did and the statute holds him and her equally responsible for its support. The statute meets the test and he must meet his obligation thereunder.

Dorsey finally argues that English received an unfair advantage by being represented by the Assistant State's Attorney. We find this allegation frivolous and unworthy of further comment.

For all the foregoing reasons the judgment of the trial court is affirmed.

*Judgment affirmed; appellant to pay costs.*